## INDUSTRIAL COVERALL LAUNDRY CORP. v. DISTRICT OF COLUMBIA.

### No. 10658.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 10, 1951.

Decided March 15, 1951.

Mr. James Fay Hall, Jr., Washington, D. C., with whom Mr. Albert E. Arent, Washington, D. C., was on the brief, for petitioner.

Mr. Harry L. Walker, Asst. Corporation Counsel, for the District of Columbia, with whom Messrs. Vernon E. West, Corporation Counsel, Chester H. Gray, Principal Asst. Corporation Counsel, and William S. Cheatham, Asst. Corporation Counsel, were on the brief, for respondent.

Before WILBUR K. MILLER, PROCTOR, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This is a petition of the Industrial Coverall Laundry, a corporation, for review of a decision of the Board of Tax Appeals for the District of Columbia. The Board affirmed the action of the Assessor of Taxes in refusing to refund to the corporation portions of income tax it had paid for 1946 and of franchise tax it had paid for 1947. The refunds were claimed on the ground that certain income had been erroneously allocated to District sources under the applicable statutes and regulations.

Petitioner has a laundry plant and offices across the Potomac in Virginia. Many of its customers are located in the District of Columbia, including printing shops, service stations, places employing garage mechanics, and other industrial enterprises. For some of these customers it launders and cleans their towels, coveralls, shop coats,

pants, aprons, and the like. For others petitioner itself supplies such articles according to need, picks them up when soiled, launders them, and delivers a clean supply each week.

The customers for whom only laundering and cleaning is done, pay an agreed amount for such service. The customers to whom petitioner furnishes a supply of its own articles each week, as above stated, pay more. In 1946 this difference amounted to about 20%, and in 1947 to about 16⅔%, of the total received from such customers.[1] The washing, laundering, and whatever else was necessary to clean and package the towels and garments were done by petitioner at its plant in Virginia. It operated its own trucks and made the necessary pick-ups and deliveries.

■ I. The principal question is whether it was proper to include as the basis upon which the District taxes were calculated all the income received from District customers to whom petitioner supplied clean articles which it owned.

If, as contended by the District, this income was entirely "rent" it was properly allocated to the District. This is clear from the statutes, and regulations prescribed pursuant thereto, set forth in the margin,[2] under which " * * * rents * * * received from sources in the District shall be allocated to the District; * * *." We think, however, that only part of the income was from rent. The typical contract consisted of a letter from the proposed customer to petitioner, with the acceptance of the latter endorsed thereon. The letter stated: "In consideration of your furnishing us with our industrial laundry requirements at the prices listed below, we agree to accept your service for one year, * * *." Separate items, such as towels, coveralls, and aprons, were listed. Opposite such listed articles was a column of prices under the heading "Rental," and, separately, prices for "Replacement." The letter also stated: "We agree to pay a minimum service charge of $.75 per week for wiping towels, $9.60 per week for garments, during the term of this agreement." Thus the parties themselves described the total arrangements as a combination of "rental" and "service."

That the laundering and cleaning was a service, not a rental, is illustrated also by the arrangements for the towels. They, like the garments, were owned by petitioner, yet only the usual laundering charge was made for them. This was due to economies which resulted from not being required to identify them as belonging to

---

1. As an illustration, petitioner's charges for coveralls in 1946 were fifty cents when they belonged to petitioner and forty cents when they belonged to the customer. In 1947 the respective figures were sixty cents and fifty cents. The additional charge when the article belonged to petitioner was designed to approximate the cost of the article during its useful life.

2. *1946.*
 (a) *Statute.* The levy upon corporate income is "upon the taxable income from District of Columbia sources * * *." 53 Stat. 1087, as amended by the Act of June 22, 1942, 56 Stat. 376; § 47–1502 (b), D.C.Code (1940, Supp. VII). Gross income includes "rent" from sources within the District of Columbia. Id. § 47–1504(a). The proper apportionment and allocation of income with respect to sources of income within and without the District may be determined by processes or formulas of general apportionment under rules and regulations prescribed by the Commissioners. § 47–1504 (b), D.C.Code (1940).
 (b) *Regulations.* " * * * rents * * * received from sources in the District shall be allocated to the District; * * *." Art. I(a).
*1947.*
 (a) *Statute.* Taxable income means the amount of net income derived from sources within the District within the meaning of §§ 47–1580 to 47–1580b. 61 Stat. 345; § 47–1571, D.C.Code (1940, Supp. VII). Gross income includes "rent." 61 Stat. 335; § 47–1557a(a), D. C.Code (1940, Supp. VII). Where the net income of a corporation is derived from sources both within and without the District, regulations of the Commissioners shall guide the determination of the portion subject to District tax. 61 Stat. 349; § 47–1580a, D.C.Code (1940, Supp. VII).
 (b) *Regulations.* Rents received from sources in the District shall be allocated to the District. § 10–2(c).

a particular customer. As to the garments, the Board found, *inter alia*, that "The additional charge when the articles belonged to petitioner was designed approximately to cover the cost of the article during its useful life"; thus, the profit lay not in their "rental" but in laundering and cleaning them, a distinctive service business. The total arrangement cannot therefore properly be described as but a recurring rental each week of clean articles. It is a cleaning of them as well, for the customer, and to that extent it is a service business. See Oklahoma Operating Co. v. Love, 1920, 252 U.S. 331, 334, 335, 40 S.Ct. 338, 64 L.Ed. 596; Personal, Business, and Repair Services, Comparative United States Summary: 1948 and 1939, Release Series BC–2–S–O, United States Department of Commerce, Bureau of the Census; 1950 Instructions for Form 1120, United States Corporation Income Tax Return, Industry Group Classification, p. 3.

Decisions relied upon by the Board do not persuade us to a different conclusion. In Harper v. Alderson, 126 W.Va. 707, 30 S.E.2d 521, 523, 153 A.L.R. 819, the court held a somewhat similar operation not to constitute a service, saying, "The customers' sole right was to have clean articles for use. They had no interest whatever in the articles before they were delivered or after they were reclaimed." But the fact remains that the total bargain included the service of cleaning and laundering, notwithstanding the customer's only right was, ultimately, in having clean articles furnished to it. In Warner Bros. Pictures, Inc. v. District of Columbia, 1948, 83 U.S. App.D.C. 158, 160, 168 F.2d 157, 159, also cited, we held that income received by Warner Bros. from the display in the District of moving pictures produced elsewhere was taxable by the District of Columbia as income "from District sources," and was derived from the use or rent of personal property. The decision is not apposite. The films were produced outside the District but the income was from their use in the District. We said that none of this income could be attributed to a servicing of the films outside the District either before or after their use, or as a continuing process. The "simple fact" was "that Warner's photoplays were hired to District exhibitors and Warner received a percentage of the money paid by them." In neither that case nor in Eastman Kodak Co. v. District of Columbia, 1942, 76 U.S. App.D.C. 339, 131 F.2d 347, cited for the proposition that it is irrelevant where the laundering is done, were the regulations governing "service" involved. As the Board pointed out in its memorandum opinion, the latter case was one "involving sales in the District of merchandise produced elsewhere."

A practical view of what actually occurs leads to the conclusion that the source of the income is twofold, namely, (1) the use or rental of the articles, with pick-up and delivery incidental thereto, and, in addition, (2) the cleaning and laundering. The latter is a service. The income fairly attributable to the first of these categories clearly should be allocated to the District, as previously indicated.

II. The question remains whether any part of the income due to service should be excluded from the District allocation. We turn again to the statutes and regulations in search of the answer. The regulations, applicable to 1946, and prescribed pursuant to § 47–1504(b), D.C.Code (1940), footnote 2, supra, provide: "* * * if the trade or business of the corporation is carried on partly within and partly without the District, the portion of the gross business income to be allocated to the District shall be determined as follows:

"(2) Where the gross income * * * is derived from work done or services performed, the portion thereof to be apportioned to the District shall be such percentage of the total of such income as the aggregate of charges for such work done and services performed in the District bears to the aggregate of such charges for work done and services performed by the corporation everywhere." Art. I(b) and Art. I(b) (2).

For the year 1947 the statute provides: "* * * If the trade or business of any corporation * * * is carried on or en-

gaged in both within and without the District, the net income derived therefrom shall, for the purposes of this article, be deemed to be income from sources within and without the District. * * *", in which case regulations of the Commissioners shall determine the portion subject to the District tax. 61 Stat. 349; § 47–1580a, D.C.Code (1940, Supp. VII). The regulations in all material respects correspond to those for 1946, supra.

Thus in 1946 by regulation and in 1947 by statute and regulations it was provided that if the trade or business of a corporation was carried on partly within and partly without the District, the gross income derived from work done or services performed shall be apportioned according to the percentage of the total income that the charges for the "work done and services performed in the District" bears to the aggregate of such charges for work done and services performed everywhere.

Petitioner does business both within and without the District. The part of its business now under consideration, namely, cleaning and laundering articles owned by it, as part of the total arrangements which have been described, is performed outside the District. It is not "work done and services performed in the District," and the charges therefor accordingly are not, under the applicable statutes and regulations,[3] apportionable or allocable to the District. We cannot escape the conclusion that once it is decided, as we do, that the laundering and cleaning are "work done" or "services performed," though the articles are owned by the petitioner and supplied to the customer as outlined, the regulations prevent us from attributing to District sources the charges for the work done or services performed in Virginia.

Exercising the scope of review defined in District of Columbia v. Pace, 1944, 320 U.S. 698, 703, 64 S.Ct. 406, 88 L.Ed. 408, and considering the point on which we disagree with the Board as primarily a legal one, namely, that in contemplation of law the facts do not make out a case of use or rental alone, or of service performed entirely in the District, but a case partially of rental and service therein, coupled with a cleaning and laundering service performed elsewhere, we set aside the decision of the Board to the extent indicated by this disagreement.

III. In summary, (a) as to the income received from the customers who do not own the articles, the part attributable to rental and to picking up the soiled articles and delivering the clean ones, including packaging and the like, should be allocated to the District. (b) The part attributable to laundering and cleaning, done in Virginia, should not be allocated to the District. (c) The Board is affirmed insofar as it has dealt with the income from the arrangements with customers who own the articles laundered and cleaned. As said by the Board, any differences on this branch of the instant case are controlled by the doctrine *de minimis* in view of the small amount of tax involved.

As to the income due to the arrangements with respect to articles owned by petitioner, the order is set aside with directions for an allocation or apportionment consistently with the views above expressed.

Affirmed in part and set aside and remanded in part.

---

3. We do not consider whether other regulations which might be valid would lead to a different result.