DISTRICT OF COLUMBIA, Petitioner,

v.

EVENING STAR NEWSPAPER COMPANY, Respondent.

Nos. 14618, 14619.

United States Court of Appeals District of Columbia Circuit.

Argued May 26, 1959.

Decided Dec. 10, 1959.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Harrison Sherman Howes, Asst. Corp. Counsel, were on the brief, for petitioner.

Mr. Leo J. Ehrig, Jr., Asst. Corp. Counsel, also entered an appearance for petitioner.

Mr. John L. Hamilton, Washington, D. C., with whom Mr. George E. Hamilton, Washington, D. C., was on the brief, for respondent.

Before EDGERTON, WILBUR K. MILLER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Respondent is a newspaper incorporated in the District of Columbia with its principal offices therein. Pursuant to Sec. 47–1580 et seq., of the D.C.Code (1951), a tax is levied on respondent for the privilege of doing business in the District. Due to the nature of the Taxpayer's operations, and the fact that neither the taxing statute nor the regulations promulgated under it precisely outline the method of handling such operations, the Taxpayer entered into an arrangement whereby the tax due would be computed under a formula agreed upon with the Assessor for the District. Under this formula, the Taxpayer voluntarily paid $140,627 as taxes for the year 1954, and $169,824 for the year 1955, on what amounted to a self-assessment. This tax was calculated on the assumption that the Taxpayer was doing business both within and without the District. In October, 1956, the Assessor assessed the Taxpayer a deficiency in the franchise tax for 1955 of $38,507.93; and in August, 1956, the Assessor levied a deficiency of $29,297.21 for the year 1954. The deficiency is attributed to the fact that the Assessor, under regulations promulgated by the Commissioner after the self-assessment of the tax, reviewed the returns for the years in question, and determined that *all* of the income of Taxpayer was attributable to *business done solely within the District,* and con-

sequently the formula that was agreed upon by the Assessor and Taxpayer in 1952 was incorrect in so far as it allocated *any* income to business done outside the District. The Taxpayer paid the deficiencies under protest. It then filed a petition for the refund of the assessments for both years. Later, in 1957, the Taxpayer filed an amended franchise tax return for both years alleging that the 1952 agreement had indeed been invalid, and that a recalculation of the tax for that year, using the appropriate regulations promulgated by the Commissioner for taxpayers engaging in trade both within and without the District, showed that the Taxpayer had *overpaid* its taxes in 1954 and 1955 in the amounts of $7,329 (1954) and $12,626 (1955). Both the claims for refund of the assessments, and the claims for refund for the overpayments were heard by the Tax Court. Findings of fact of the Tax Court were made and later modified on the District's motion. In substance the tax court held (1) that the Taxpayer was engaged in trade or business both within and without the District; and (2) that no tax could validly be levied on the Taxpayer under the statute or the Regulations.[1] The District now appeals from the decision on the following points:

(a) The Tax Court erred in many of its findings of fact, especially in the finding that the Taxpayer is operating both within and without the District.

(b) The Tax Court "misapplied" the statute and Regulations.

The applicable statutes are: Secs. 1 and 2, Article 1, Title X of the District of Columbia Franchise Tax Act of 1947, as amended, D.C.Code Secs. 47–1580, 1580a (1951).

Sec. 1: "It is the purpose of this article to impose * * * (2) a

franchise tax upon every corporation * * * for the privilege of carrying on or engaging in any trade or business within the District and of receiving such other income as is derived from sources within the District. * * * The measure of the franchise tax shall be that portion of the net income of the corporation * * * as is fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District. * * *

Sec. 2: *"Allocation and apportionment.*

"The entire net income of any corporation * * * derived from any trade or business carried on or engaged in wholly within the District shall * * * be deemed to be from sources within the District, and shall, along with other income from sources within the District, be allocated to the District. If the trade or business of any corporation * * is carried on or engaged in both within and without the District, the net income derived therefrom shall * * * be deemed to be income from sources within and without the District. Where the net income of a corporation * * * is derived from sources both within and without the District, the portion thereof subject to tax under this article shall be determined under regulation or regulations prescribed by the Commissioners. * * * "

The statute was then implemented by Regulations promulgated by the Commissioners and amended August 6, 1953. The Regulations are set forth in the margin.[2]

---

1. The Tax Court ordered a refund of the protested deficiency assessments. However, it did not order a refund of the entire tax paid on the grounds that this sum was "self assessed." The court did refund small amounts ($7,329 and $12,626) claimed to be "overpayments."

2. Sec. 10.2. Measure of Tax-Allocation and Apportionment. The measure of the franchise tax shall be that portion of the net income of the corporation * * * as is fairly attributable to any trade or business carried on or engaged in within the District, as defined in the Act, and

The appeal presents two issues:

(a) Is the Taxpayer carrying out a trade or business both within and without the District?

(b) Can a valid tax be levied on it under our statute and Regulations and if so how shall its income be apportioned?

## 1.

### Is the Taxpayer carrying out a trade or business within and without the District?

The Taxpayer gains revenue in three ways: (1) revenue from the sale of its papers (circulation revenue), (2) revenue from the sale of advertising space

such other net income as is derived from sources within the District. The portion of such net income which is "fairly attributable" to any trade or business or such other net income as is derived from sources within the District shall be determined by allocation and apportionment thereof [as follows] * * *.

Sec. 10.2–(b). "Allocated" and "Apportioned" Defined. * * * If the entire net income is derived from engaging in a trade or business within the District or from sources within the District, all of such income shall be allocated to the District. If the net income is derived from engaging in a trade or business partly within and partly without the District or from sources both within and without the District, such income shall be allocated and apportioned in accordance with the specific provisions or formulae prescribed in these Regulations.

Sec. 10.2–(c). Income Attributed to the District of Columbia. If the trade or business is carried on or engaged in wholly within the District, the entire net income from trade or business shall be allocated to the District. If the trade or business is carried on partly within and partly without the District, that portion of the net income from trade or business to be apportioned to the District shall be determined as follows:

(1) Income from sales of tangible personal property.

(a) Where income for any taxable year is derived from the manufacture and sale or purchase and sale of tangible personal property, the portion thereof to be apportioned to the District shall be such percentage of the total of such income as the District sales made during such taxable year bear to the total sales made everywhere during such taxable year. Every corporation * * * which carries on or engages in business in the District * * * is * * * subject to tax. For the purpose of this regulation, the phrase "District sales" shall mean all sales to District customers the income from which is fairly attributable to the

trade or business carried on or engaged in within the District, including solicitation in the District by salesmen or other representatives of the taxpayer, [and] that portion of sales to customers outside the District the income from which is fairly attributable to the trade or business carried on in the District, and sales of tangible personal property the income from which is from District sources.

\* \* \* \* \*

(3) Income for any taxable year derived from interest, dividends, rents, royalties, income from the sale of real property, income from the sale of intangible personal property, income from the sale of assets other than capital and income from a business or source other than those hereinbefore referred to, which is fairly attributable to the trade or business carried on or engaged in within the District, or which is derived from sources within the District shall be allocated to the District. If the trade or business herein referred to is carried on or engaged in both within and without the District, that portion of the income from trade or business to be apportioned to the District shall be such percentage of the total of such income as the aggregate of such income or charges for work done or cost of work done in the District bears to the aggregate of such income or charges for work done or costs of work done by the taxpayer everywhere. The assessor is authorized to use the aggregate of "income" or the aggregate of "charges" or the aggregate of "costs" with respect to such income if in his opinion it will produce an equitable apportionment.

(4) Where the assessor shall determine that the formulae herein prescribed are inapplicable or inequitable to the taxpayer and the District in any case, and that the net income of such taxpayer from within the District may be more accurately determined by the use of separate accounting, such taxpayer shall report its net income from within the District on the basis of separate accounting and the tax shall be assessed on such basis.

and (3) revenue in the nature of interest on obligations, rents, and dividends. It is conceded that rents, etc., are solely from the District sources. The only question before us is the source of its other income.

Circulation revenue is gained through the sale of papers to "distributors" in the following manner:

The Taxpayer contracts with distributors, both within and without the District. The contracts provide for the sale by the Taxpayer, and the buying by the distributors, of enough papers to service certain circulation lists which are the property of the Taxpayer, but which are "leased" to the distributors. The distributors in turn sell the paper to newsstand dealers, and in some cases to newsboys, who in turn sell them to the final reader. Included in the contracts are grants of exclusive delivery rights for a certain area, as well as promises by the distributor to promote circulation in his area. Delivery to these distributors is carried out in three ways:

(1) Delivery by the Taxpayer, using its own trucks, to distributors outside the District, chiefly in Virginia and Maryland. All papers delivered in this manner are considered "outdistrict" sales, and the revenues are attributed to "outdistrict" sources. The Taxpayer explains this accounting system on the theory that when the distributors take delivery outside the District, the ultimate consumer will reside outside the District as well and there is no evidence to the contrary. Approximately 20% of its papers were sold in this manner.

(2) Delivery to distributors at the Taxpayer's loading platforms inside the District is carried on the books of the Taxpayer as producing revenue from District sales without respect to ultimate delivery.

(3) A much smaller number of papers is sent to far distant points by mail and common carrier, with the Taxpayer paying the freight.

The Taxpayer maintains 12 "supervisors," who direct the activities of these distributors. Their work consisted of checking the operations, setting up delivery schedules, advising, instructing the distributors as to the contents of their contracts, selecting the distributors with whom the Taxpayer should do business, and promoting circulation throughout the entire metropolitan area. Five of these supervisors worked exclusively in Virginia and Maryland. The other seven did occasional work in these states as well as in the District.

The Taxpayer gained the principal portion of its revenue from advertising of three general characters:

(a) Classified Advertising: This type of advertising was gained through solicitation, as well as through voluntary contacts made by the advertisers.

(b) Retail Advertising: Retail display advertising was obtained through Taxpayer's solicitors (about 22) who accepted ads from stores within and without the District, as well as from District stores and suburban branches.

(c) National or general display: National advertising is secured through Taxpayer's solicitors, or through advertising representatives in other large cities.

Other advertising revenues are received from advertising in separate insert features in the Star, which are produced by outside publishers, and which are purchased from them by the Taxpayer for use in the Sunday Star. The producers of these "insert" sections pay a certain revenue to the Taxpayer based on circulation ratios between the Taxpayer's circulation and the total circulation of these features throughout the country.

As to its newsgathering, the Taxpayer is a member of the AP, and as such supplies to and may use any news collected by that body, paying for its use on the basis of the Taxpayer's circulation. In addition, it purchases news material from other national news services. Local suburban news of Maryland and Virginia is gathered by about 10 employees.

On the basis of this record, the District contends that the Taxpayer's in-

come is solely from District sources, in that the Taxpayer is carrying on a trade or business solely within the District. Its principal contentions are:

(a) That the sale of all papers occurred in the District in that the title to the papers passed to the distributors at the loading platform of the Taxpayer, regardless of final destination. The short answer to this is that this court rejected the "passage of title" test as solely determinative of source of income in Lever Bros. Co. v. District of Columbia, 1953, 92 U.S.App.D.C. 147, 204 F.2d 39, 43. Though passage of title is still useful as a gauge, it is not reliable as a sole determinant.

(b) That all contracts with distributors were "principally secured and negotiated" within the District.

(c) That Taxpayer's activities in Maryland and Virginia are not sufficient to subject it to service of process in those states under accepted tests laid down by the Supreme Court and from this the District argues the Taxpayer cannot be said to be "doing business" there. This court rejected the "service of process" test as determinative in Owens-Illinois Glass Co. v. District of Columbia, 1953, 92 U.S. App.D.C. 15, 204 F.2d 29, 31.

(d) That no other jurisdiction has seen fit to tax the Taxpayer as doing business therein and this is argued as persuasive that the Taxpayer's business is solely within the District. Whether or not another jurisdiction sees fit to tax this Taxpayer is immaterial. The question here is the application of the District's tax statute.

As a matter of common understanding of the terms used, it is obvious that the Taxpayer's business cannot fairly be one carried on *solely within the District*. Without the activities outside the District, and especially without the sale of a substantial number of newspapers outside, its advertising and its newsgathering activities, the Taxpayer would have a very substantial reduction in income. The interplay of activity and influence of affairs in Virginia and Maryland on the

Taxpayer and in turn of its influence in those two states makes it plain that the District's position as to this issue is without substance. See In re Kansas City Star Co., 1940, 346 Mo. 658, 142 S.W.2d 1029, 130 A.L.R. 1168. We therefore hold that the Taxpayer's net income is derived from sources both within and without the District.

### 2.

### Applicability of the Statute and Regulations.

The Tax Court held that under the existing Regulations no valid tax could be levied on the Taxpayer due to the peculiarity of its operations. This decision was based on two grounds:

(a) The statute (Secs. 47–1580, 1580a) levies a tax on that portion of the net income "as is fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District." In this instance the *net income* of the corporation is both from a trade or business carried on in the District (referring to advertising and circulation revenues) *and also* "from sources within the District" (referring to rentals, etc.). In effect, both parts of the definition can be applied to the Taxpayer. The Tax Court held that there is only *one net income* from commercial operations. This net income is the gross income from all activities less all expenses, since in the Tax Court view it could not segregate expenses and assign them to any segment of the gross income. This led the Tax Court to hold that a corporation which has income from varied types of activities, some of which are conducted both within and without the District, does not have two "net incomes," and to the extent tax depends on spelling out two net incomes of a single entity, it is unworkable.

(b) The Tax Court held that assuming the statute is workable, the Commissioners have not formulated regulations applicable to a company which engages in multiple activities both within and without the District.

We hold that these conclusions are incorrect. As to the attack on the statute, admittedly, the way in which it speaks of "net income" does not accord with the way that term is used in ordinary accounting procedures. To this extent, it may be said to be badly drawn. Nonetheless, it *does* speak of *more than one kind of net income,* and we think the Assessor can apply it to a taxpayer publishing and distributing newspapers. Since the statute refers to more than one category of net income, it must envision a situation where the revenue of a corporation comes from such varied and diverse sources that it can be separated into more than one stream. In this case, as would be true of many businesses, the income can logically be divided into operating and non-operating income. To the extent that they are separated, income from one source can be allocated to expenses attributable to that source and a single figure, i. e., "net income," can be used to describe the true earnings from the particular operation. True, it is difficult in many cases to allocate income and expense to a particular operation. But it is not impossible. In this case, the income from the rentals, etc., (non-operating) can constitute a particular operation, and a figure for expenses attributable to them can be calculated, even if the figure be arbitrary to a certain extent. In any event they are of no great consequence. With advertising and circulation revenues the allocation procedure presents a different problem, but if both these activities are considered together as "operating" revenue deriving as they do ultimately from circulation, a factor can readily be arrived at as "net income" attributable to "operations."

In short, the tax will be calculated on the sum of the two separate "net incomes"; i. e., (1) net income from non-operating activities (rentals, etc.) which in this case is from "sources within the District," and which is specifically allocated to the District, *and* (2) that portion of operating net income from the trade or business which is "fairly attributable to * * * business carried on * * * within the District." The only problem remaining is the proper apportionment of the net operating income, as between District and non-District sources.

The Tax Court's second conclusion is that the Commissioners did not promulgate proper allocation regulations for a company that engages in various types of activities. This conclusion must also fail, if we apply the view that there can be more than one "net income," depending upon the nature of the activities. The statute speaks of two types of "net income," recognizing that corporations may have income both from a trade or business, or from "other sources within the District." It gives the Commissioners the duty to promulgate the regulations whereby the portions subject to tax will be calculated.[3] The Commissioners have laid out such Regulations, and they envision a procedure whereby certain income will be specifically allocated to District sources, i. e., rents, royalties, income from sale of real property, etc., see D. C. Income and Franchise Tax Regulations, Sec. 10.2–(c) (3),[4] whereas other income from various activities both within and without the District would be apportioned depending upon the source or activity which produced it. See Regulations, Sec. 10.2–(c) (1), (2), (3). The Assessor has been given broad authority with respect to the apportionment. Regulations, Sec. 10.2–(c) (3), (4). On this record, we cannot say that the Taxpayer's business activities, varied though they be, do not fall within the scope of the statutory taxing scheme.

3. D.C.Code § 47–1580a (1951).

4. See P–H State & Local Tax Serv. ¶ 10,580, which states that "certain items of income must be specifically allocated and balance of income, which is income from trade or business, is subject to apportionment." As an example of income subject to specific allocation, Prentice-Hall cites interest, dividends, rents, royalties, etc., ¶ 10,585. We have, in this case, characterized this type of income as "non-operating."

### 3.

**Statute and Regulations as applied to a newspaper.**

■■ The original formula for taxation worked out by agreement between the Assessor and the Taxpayer is clearly erroneous, for the reason, among others, that it does not follow any applicable Regulation. Indeed, both parties now recognize its invalidity. Similarly, the deficiency assessments levied by the Assessor are invalid, since they were based on the false premise that all of the Taxpayer's income was from sources solely within the District. They were properly refundable. The problem before us now is the proper application of the above rules to this particular case.

■ It is clear that the rents, royalties, etc., from non-operating activities are from District sources and should be specifically allocated to the District in accordance with Regulations, Sec. 10.2–(c) (3). This net income is to be calculated by subtracting from the gross income attributable to these sources the expenses incurred in their receipt. The allocation of expenses to these sources may be commanded by the Assessor under Regulations, Sec. 10.2–(c) (4). This net income figure is, for these purposes, "non-operating net income."

■ The balance of Taxpayer's income is from circulation and advertising revenue. We are faced with the question whether these two items must be separated for apportionment purposes. We think that further separation is neither necessary nor warranted. The interrelationship between the two is so intimate that a separation would of necessity be arbitrary and artificial. It is apparent that all revenues, (other than the non-operating revenues) rest ultimately upon circulation and readership. Merchants place and pay for advertising because of those who buy and read papers. The advertising rates are directly related to circulation. The activities of the Taxpayer are directed to one end: the sale of newspapers, which contain news and ads from many and varied sources. That the advertising revenue is greater than the circulation revenues is not controlling; the former is the fruit of the latter. Essentially both are "operating revenues." In a sense advertising revenues are subsidiary since they are dependent upon circulation. Both types of revenues should be treated under one heading. It is not surprising that the Taxpayer takes this view, for it is a matter of common sense and business reality.

Thus the "operating net income," from advertising and circulation must be apportioned between District and non-District sources. We hold that sales of papers are "sales of tangible personal property" under Regulations Sec. 10.2–(c) (1) (a), and the apportionment scheme there set out should be applied to this "operating net income." In other words, once it is determined, for example, that 20% of the newspaper's circulation is outside the District and the balance within the District, then 80% of the "operating net income" would be the amount attributable to the District and subject to the tax.

The sum of the entire "non-operating net income" (rents, etc.) and the "operating net income attributable to trade within the District" is the taxable income to which the statutory tax percentage (5%) shall be applied to fix the tax.

We therefore:

(1) Affirm the Tax Court's basic holding that the Taxpayer is engaged in business within and without the District.

(2) Affirm the decision of the Tax Court refunding the deficiency assessments as invalidly assessed.

(3) Remand to the Tax Court with directions to require the Assessor to calculate the tax in accordance with this opinion.

Affirmed in part, reversed in part and remanded for further proceedings.