DISTRICT OF COLUMBIA, Petitioner,

v.

SOUTHERN RAILWAY COMPANY, Respondent.

No. 14477.

United States Court of Appeals District of Columbia Circuit.

Argued April 17, 1959.

Decided Feb. 25, 1960.

Petition for Rehearing Denied May 11, 1960.

Mr. Henry E. Wixon, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, and Milton D. Korman, Principal Asst. Corporation Counsel, were on the brief, for petitioner. Mr. Leo J. Ehrig, Jr., Asst. Corporation Counsel, also entered an appearance for petitioner.

Mr. William B. Jones, Washington, D. C., with whom Mr. William A. Glasgow, Washington, D. C., was on the brief, for respondent.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This case arises under the tax laws of the District of Columbia. The Government of the District of Columbia seeks review of a decision of the District of Columbia Tax Court holding that the Southern Railway Company is entitled to a refund of the major part of the franchise taxes assessed and collected from it in each of the taxable years 1949–1953, inclusive. Southern provided passenger and freight transportation and related services both within and without the District in the taxable years. The only question raised relates to the part of the net income of Southern which is properly to be apportioned to the District under the applicable regulations for franchise tax purposes.

During the taxable years the D.C. Code (§§ 47–1571a and 47–1580 (1951)) imposed a franchise tax of 5% upon the portion of the net income of every corporation which was fairly attributable to the trade or business carried on in the District and which was derived from sources within the District. The governing legislation provided that—

"Where the net income of a corporation * * * is derived from sources both within and without the District, the portion thereof subject to tax under this article shall be determined under regulation or regulations prescribed by the Commissioners. The Assessor is authorized to employ any formula or formulas provided in any regulation or regulations prescribed by the Commissioners under this article which, in his opinion, should be applied in order to properly determine the net income of any corporation * * * subject to tax under this article." § 47–1580a.

The pertinent regulation promulgated by the Commissioners which was in existence during the taxable years involved, up to August 6, 1953, reads as follows:[1]

"Where gross income for any taxable year is derived from work done or services performed, the portion thereof to be apportioned to the District shall be such percentage of the total of such income as the aggregate of charges for such work done and services performed in the District bears to the aggregate of such charges for work done and services performed by the taxpayer everywhere."

On August 6, 1953, the Commissioners amended this regulation to read as follows:[2]

"Where income for any taxable year is derived from work done or services performed, the portion thereof to be apportioned to the District shall be such percentage of the total of such income as the aggregate of charges for or costs of such work done and services performed in the District bears to the aggregate of such charges for or costs of work done and services performed by the taxpayer everywhere. The Assessor is authorized to use the aggregate of 'charges' or the aggregate of 'costs' with respect to work done and services performed if in his opinion it will produce an equitable apportionment."

In District of Columbia v. Radio Corporation of America, 1956, 98 U.S. App.D.C. 119, 232 F.2d 376, certiorari denied 1956, 352 U.S. 845, 77 S.Ct. 44, 1 L.Ed.2d 51, we held that an amendment made on August 6, 1953, to another subsection of the apportionment regulations could not be applied retroactively to the years 1949, 1950 and 1951, where there was during those years a valid regulation then in force. And we have applied as valid the very regulation that was in force here for the taxable years up to

---

1. Section 10–2(d) C (2) of the regulations promulgated on August 31, 1948, and Section 10–2(d) (2) of the regulations promulgated October 16, 1950.

2. Section 10–2(d) (2) of the regulations of August 6, 1953.

August 6, 1953. Industrial Coverall Laundry Corp. v. District of Columbia, 1951, 88 U.S.App.D.C. 266, 188 F.2d 669. Compare Smoot Sand & Gravel Corp. v. District of Columbia, 1958, 104 U.S. App.D.C. 292, 261 F.2d 758, certiorari denied 1959, 359 U.S. 968, 79 S.Ct. 876, 3 L.Ed.2d 834. Thus we agree with the Tax Court that the regulation adopted on August 6, 1953, applies here only for the period August 6–December 31, 1953, and that the regulation in force prior thereto applies to the taxable years 1949, 1950, 1951, 1952 and the period January 1–August 5, 1953.

In all the taxable years here involved Southern carried passengers and freight over some 6,280 miles of trackage in eleven states. It also provided passenger and freight transportation service into the District from these states and out of the District to these states over a maximum trackage in the District of 3.43 miles for passengers and 4.25 miles for freight.[3] In addition, Southern provided services related to transportation, such as selling food and drink, handling baggage, and picking up freight. There was testimony that the charges for passenger transportation were fixed, and approved by the Interstate Commerce Commission, on the basis of mileage; and that the freight charges took into consideration not only the distance hauled but also the nature of the commodity and its quantity. There was also testimony that the expenses of operating the railroad were taken into account in fixing charges. The charges made were not segregated specifically into separate charges for the services provided in the District and those provided elsewhere. However, Southern for accounting purposes allocated to the District in respect of passenger transportation such proportion of the total revenue and expenses as passenger miles operated in the District[4] bore to passenger miles operated everywhere; and in respect of freight transportation allocated to the District such proportion of the total revenue and costs as freight ton miles operated in the District[5] bore to freight ton miles operated everywhere.

The Tax Court found that Southern's method of allocating charges for services performed[6] was correct and reasonable and held that the ratio of District charges to total charges obtained thereby should be used in apportioning net income for District franchise tax purposes for the taxable periods up to August 6, 1953. It rejected the Assessor's method of apportioning net income for these periods because the assessments were made under the August 6, 1953, amended regulation, and not under the regulation in force at the time, and because the taxes computed by him were "grossly excessive." It is not disputed that the Assessor apportioned net income for all years under a formula based on the ratio that District costs of work done and services performed (as determined by him) bore to such costs everywhere.

The District urges that, notwithstanding testimony by responsible taxing officials that the assessments were made under the August 6, 1953, regulation, we should view the assessments as made under the proper regulation then in force. It says that where, as here, the charges

3. This trackage was owned by other rail companies and a terminal company, and used by Southern under contract.

4. A "passenger mile" means one passenger carried one mile. Passenger miles of Southern in the District were 3.43 times the number of pasengers carried into or out of the District by Southern.

5. A "freight ton mile" means one ton of freight carried one mile. Freight ton miles of Southern in the District were 4.25 times the number of tons of freight hauled into or out of the District for the account of Southern.

6. It is agreed by the District that the Tax Court correctly interpreted the phrase "work done and services performed" in the regulation as meaning work done and services performed for persons or corporations other than the taxpayer. Br. 37. Under this interpretation Southern performed work and services for others than itself only in connection with its transportation and related services.

for services performed in the District cannot be precisely determined and an allocation to the District of some part of the total charges must be made on some basis, it was the Assessor's practice to determine the ratio that District charges bear to total charges by use of the ratio that District costs bear to total costs. Therefore, it says, we should treat the assessments here as being made on that basis. We find ourselves unable to accept such a view. It would not be in accord with the testimony or with the terminology of the assessments themselves. We cannot say that the Tax Court erred in holding that the Assessor did not assess the taxes under the regulation which controlled for the years and period in question.

The remaining question is whether the Tax Court's determination of the income apportionable to the District was forbidden or produced an unreasonable result, as the District contends.

The regulations promulgated on August 28, 1947, contained a specific provision that—

"In determining the apportionment of gross income for the taxable year of a railroad company * * * operating both within and without the District, the portion thereof derived from within the District shall be determined by an apportionment based on the percentage that the car * * * mileage for the taxable period within the District bears to the total of such mileage everywhere; *Provided,* however, That other factors, such as the operating investment within and without the District, may also be used, whenever, in the opinion of the Assessor, the use of such additional factors in the *Apportionment formula would result in a more equitable tax.*" Sec. 10–2(d) (4).

This provision was omitted in the 1948 and 1950 regulations applicable here.

The District urges that the abandonment of this regulation by the Commissioners forbids its use in this case after its repeal. Assuming that this would be so, a point we need not decide, it has no relevance here, for the Tax Court did not attempt to use the formula contained in the abandoned regulation. The old regulation prescribed a formula based on car miles. If car mileage within the District means the total of the number of miles each car is operated in the District, as compared with the total of the number of miles each car is operated everywhere, regardless of the load carried by each car, as we think it does, it is clear that the passenger miles and freight ton miles formulae used by the Tax Court will result in allocating to the District a different percentage of total charges for transportation and related services, to the extent that the cars carried different loads of passengers and freight within the District and without. We cannot infer that by abandonment of the car mileage formula, the Commissioners intended to preclude the use of a different and perhaps a more favorable mileage formula for the purpose of determining District charges.

██ Nor—on the evidence before us—will we disturb the Tax Court's finding that it is reasonable to determine the charges allocable to the District on the ratio that passenger miles and freight ton miles operated in the District bore to such miles operated everywhere. The District relies on the opinion of an expert witness that such an allocation does not reflect the heavy costs of the terminal facilities and general office expenses incurred in the District. Southern's terminal and its general headquarters are located in the District. But we think it is not debatable that the general office and administrative expenses, as well as the costs of maintaining, supplying, and repairing cars and engines and certain other terminal costs, are for the benefit of the whole transportation system, not for the benefit of the District operations alone, and that the total charges made over the entire system are intended to recoup these costs. While an allocation of charges under the passenger and freight ton mile formulae used by

the Tax Court may perhaps not reflect the accurate proportion of such costs that should be properly applicable to the District, mathematical exactness is admittedly not possible. In any case, we are not referred to any other method of determining charges allocable to the District that would produce a more reasonable and equitable result. Certainly, the Assessor's method of determining the part of Southern's expenses or costs which are allocable to the District would not, so far as has been demonstrated, accomplish this because his method treated as District costs a substantial part of the total management, legal, accounting and administrative costs, as well as certain terminal expenses, incurred for the benefit of the entire rail system or other parts of it.[7] In short, we think the Tax Court could properly reject, under the regulation, the Assessor's method as resulting in an inflated and unreasonable figure for the costs and hence charges which are allocable to the District.[8]

For the period August 6–December 31, 1953, the Assessor was authorized by the August 6, 1953, regulation to use an apportionment formula based on the "costs of work done and services performed"[9] in the District as compared with the total costs. But we agree with the Tax Court that the figure used by the Assessor for District costs was inflated because of the inclusion therein of costs applicable to other portions of, or to the whole of, the transportation system. On the record before us we cannot hold that the Tax Court reduced the District costs to an unwarranted extent.

We recognize the force of the District's contention that a larger share of Southern's net income should be allocated to the District than that resulting from the Tax Court's decision for the taxable years involved. But we have been referred to no tenable basis on which we could overturn that decision. We need not discuss the remaining contentions of the parties, or other portions of the Tax Court's holding as to which no review was sought.[10] The decision of the Tax Court is therefore

Affirmed.

7. Cf. Fleming v. Oklahoma Tax Commission, 10 Cir., 1946, 157 F.2d 888, 893.

8. We of course are speaking only of what is reasonable in relation to the regulation now before us. We do not express any views as to other possible regulations which might employ different criteria for the apportionment to the District of the net income of a railroad maintaining a general office and extensive terminal facilities here.

9. See footnote 6, supra.

10. This includes Southern's contention that the Tax Court had no jurisdiction to reassess, but only to cancel the assessments made by the Assessor. This was not made the subject of a cross-appeal.