**BROADCASTING PUBLICATIONS, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA, Respondent.**

**DISTRICT OF COLUMBIA, Petitioner,**

v.

**BROADCASTING PUBLICATIONS, INC., Respondent.**

Nos. 16532, 16535.

United States Court of Appeals District of Columbia Circuit.

Argued May 23, 1962.

Decided Nov. 21, 1962.

Petition for Rehearing En Banc Denied En Banc Jan. 25, 1963.

Mr. Werner Strupp, Washington, D. C., with whom Mr. Hymen Tash, Washington, D. C., was on the brief, for petitioner in No. 16532 and respondent in No. 16535.

Mr. Henry E. Wixon, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Harrison S. Howes, Asst. Corp. Counsel, were on the brief, for respondent in No. 16532 and petitioner in No. 16535.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The two cross appeals are from a decision of the District of Columbia Tax Court which were consolidated here.

## No. 16532

Broadcasting Publications, Inc. (hereafter called Taxpayer), is petitioner in No. 16532, which arises out of denial of claims for refund by the District. The Taxpayer claimed refunds alleging that the District of Columbia Code required allocation of Taxpayer's net income to sources within and without the District exclusively on the basis of circulation of Taxpayer's publication. Taxpayer also challenges the District's right to raise issues concerning depreciation rates, not raised until the Taxpayer's witnesses were cross-examined in the Tax Court proceeding in which the refund was sought.

## No. 16535

In No. 16535, the District of Columbia as petitioner attacks findings and conclusions of the Tax Court which declared erroneous in part assessments of corporation franchise taxes for the fiscal years ending in 1956, 1957 and 1958, of $7,808.-41, $7,879.65 and $7,807.40.

The Taxpayer contends that the decision in District of Columbia v. Evening Star Newspaper Co., 106 U.S.App.D.C. 360, 273 F.2d 95 (1959), compels the refund allowed by the Tax Court. The Taxpayer prints and publishes in the District of Columbia a trade magazine covering matter concerning the radio and television industry. Its subscribers and advertisers are almost entirely outside the District. It voluntarily reported income and paid taxes for 1956, 1957 and 1958. Subsequently this court rendered its decision in the Evening Star case, supra, and Taxpayer sought refunds claiming in substance that its income was subject to apportionment according to the residence or non-residence of its subscribers.

The Taxpayer's principal offices, its officers and 30 of its 47 employees conduct in the District of Columbia the business of publishing and distributing the magazine. The 30 employees include 4 in advertising production, 8 in circulation, 16 reporters and 2 secretaries. The magazine is sent to subscribers through the United States mails; all subscriber records and billing records are maintained in the Taxpayer's offices in the District of Columbia; bills are sent from the offices in the District and payments are received here. Subscribers are solicited primarily by direct mail from the central office. Taxpayer has three branch offices; its New York office has two executives, three salesmen, five reporters and one secretary. Its Chicago office has one manager, one reporter, one secretary. Its Hollywood office has one manager, one reporter and one secretary. These branch offices gather news and sell advertising space but have no duties relating to circulation which is entirely in the office in the District. All or substantially all of the advertising is solicited and sold by the branch offices.

The following issues are presented:

██ (1) *Did the Tax Court err in refusing to reserve decision pending issuance of amended regulations which would govern this case?*

We think not. Where valid regulations are in force at the operative date of the tax, new or amended regulations are not to be given retroactive effect. District of Columbia v. Southern Ry. Co.,

107 U.S.App.D.C. 285, 277 F.2d 84 (1960). The holding of this court in District of Columbia v. Gallant, Inc., 110 U.S.App.D.C. 202, 290 F.2d 745 (1961), involved failure of the District Commissioners to implement a statute which directed them to establish a formula of apportionment for the Assessor's use. This court stayed remand to allow the Commissioners time to comply with the statute. D.C.Code § 47–1580 (1961). In District of Columbia v. Evening Star Newspaper Co., supra, this court held that there were in existence valid regulations applicable to newspapers.

Regulation 10.2(c) (1) (a) as amended August 6, 1953, was in effect during the taxable years here involved. Taxpayer does not challenge the validity of the Regulation or its applicability to magazines. The amended Regulations of July 14, 1961, are not merely corrections of omissions or errors; rather they manifest a new approach and are not to be given retroactive effect in this case. We do not consider the validity of the Regulations.

■ (2) *Did the Tax Court err in deciding issues not specifically framed by the pleadings and was it error to reach and decide questions of methods of amortization and depreciation?*

Taxpayer argues that the Tax Court is a judicial rather than an administrative arm of the District government and hence is limited to deciding issues framed by the pleadings. Our resolution of the case makes it unnecessary to decide the precise nature and scope of the Tax Court's powers and functions.

The Taxpayer's business activities within the District consisted of (a) publication and distribution of a trade magazine, and (b) operation of several office buildings. The refund claim is based on the premise that the circulation test applicable to a local newspaper distributed in the Washington area applies in the same way to a nationally distributed trade publication. If it does, Taxpayer is entitled to a refund. In order to determine the amount of any such refund, however, the Tax Court could not look

only to the central contention which the Taxpayer urged. The Tax Court was obliged to view the refund claim as opening the issue of the amount of tax due for the years in question, even though there was special emphasis on one factor, that of the applicability of the so-called Evening Star circulation test. We hold the Tax Court was authorized to examine into reasonableness of depreciation for without so doing a just resolution of tax liability could not be reached. If in fact Taxpayer was taken by surprise to its detriment, its remedy was to ask for a continuance to prepare to meet the issue. We have no doubt the Tax Court would have granted such accommodation.

■■ (3) *Does the District of Columbia Income and Franchise Tax Act of 1947, § 3(a) (7), D.C.Code § 47–1557b(a) (7) (1961), allow use of the declining balance method of depreciation?*

The 1947 Act provides:

"(7) DEPRECIATION.—A reasonable allowance for exhaustion, wear, and tear of property used in the trade or business, including a reasonable allowance for obsolescence; * * * as permitted by reasonable rules and regulations which the Commissioners are hereby authorized to promulgate. * * *"

This statute establishes no particular method or pattern of allowable depreciation but to hold that it allows none or disallows any particular kind of depreciation method would negate the plain congressional intent to permit some allowance for a universally recognized sound business practice. There is no evidence on which we can evaluate the reasonableness of the method used by this Taxpayer in relation to the statute authorizing a "reasonable allowance." We are unable to say that the statute precludes the method adopted by Taxpayer in its returns. It is not without some significance that Congress in the Internal Revenue Code, § 167(a) (2) made a legislative finding that the declining balance method is reasonable in that context. Cf. District of Columbia v. Lewis, 109

U.S.App.D.C. 353, 356, 288 F.2d 137, 140 (1961).

We are constrained to hold that absent any regulation pursuant to the statutory provision quoted above, and absent a showing by the District that it is not reasonable, Taxpayer's treatment must stand until and unless in some appropriate proceeding the contrary is shown.

■ (4) *Did the Tax Court err in denying the Taxpayer's method of amortization of certain improvements made for its tenants?*

On the record made in the Tax Court we think not. The Taxpayer sought to take a five year amortization of the improvements, as against a 20 year life of the building itself, on the claim that the alterations were made for a specific tenant on a five year lease. It was for the Taxpayer to show that the improvements would not enhance the value of the building beyond the life of the existing lease. However this claim was not the subject of extensive inquiry or evidence. On the record before us [1] we are unable to conclude that the Tax Court holding was clearly erroneous.

■■ (5) *Is the circulation test for apportionment of income under District of Columbia v. Evening Star Newspaper Co., 106 U.S.App.D.C. 360, 273 F.2d 95 (1959), applicable in the same manner to all publishing enterprises including this Taxpayer?*

Under D.C.Code § 47–1580a (1961) if a business is carried on solely within the District its entire income is deemed to be derived from sources within the District. If the business is carried on partly within and partly outside the District only the income attributable to within District business activity is subject to the franchise tax. A mere recital of this broad sweep of the statute suggests some of the

problems of allocation and apportionment.

In District of Columbia v. Evening Star Newspaper Co., supra, we dealt with a local newspaper published in the District but with large circulation outside the District in adjoining Maryland and Virginia. There it was contended, *inter alia*, that the failure of other jurisdictions to tax the business activity in question rendered the newspaper taxable as a business entirely within the District.[2] We held that apportionment of tax on some basis was indicated because elimination of the revenues traceable directly from outside business activities would cause a significant reduction in the total income.

The cross-appeal of the District in No. 16535 challenges the Tax Court's literal application of the Evening Star case to the circulation of the Taxpayer and urges that a local daily newspaper operation is neither factually nor legally comparable to a national trade periodical. Various differences in the two publishing operations are noted by reference to the facts of the Evening Star case:

1. Evening Star had significant daily business contacts in Maryland and Virginia.

2. Evening Star's out-of-District business contacts were of the same kind as their principal circulation in the District.

3. Evening Star's agents solicited subscriptions and distributed newspapers daily in Virginia and Maryland; its cars and delivery trucks traveled daily between the District and Maryland and Virginia, so that its direct physical contact was continuous.

4. Evening Star's deliveries to subscribers *by U. S. mail* were not given any

---

1. The Tax Court finding is that these improvements included some "made for the benefit of tenants [and] there has been no showing of the character or that they would not enhance the value of the building * * * or that they will not be useful or used, if and when the tenant quits."

2. In Evening Star, this court applied D.C. Franchise Tax Reg. § 10–2(c) (1) (a), as amended Aug. 6, 1953. Reg. § 10–2(c) was amended July 14, 1961. This case is being decided under the 1953 Regulation which was in effect during the taxable years in issue. See point (1) supra.

weight as out-of-District business activity.

The Taxpayer in this case does not publish a local daily newspaper with suburban subscribers nearby but rather a weekly trade magazine whose *subscribers* are almost entirely outside the District even though the greater part of its general business activity is within the District. The Evening Star circulation test is not the exclusive apportionment formula for all types of publications. True Congress or the Commissioners could lawfully make such a test the exclusive test, but they have not done so, nor have we. Thus the two cases are factually different in various respects which are readily apparent from the above recital of the considerations emphasized in the Evening Star case. Suffice it to point out that if a daily newspaper solicited all its outside subscribers by mail, sent papers to them by mail and were paid by mail, its business activities outside the District for the purposes of the present tax would be so attenuated as to render them ineligible to apportion the tax based on allocation of circulation.

Here only 2.1% to 3.8% of the Taxpayer's circulation is in the District although by far the greater part of its total business activity is carried on within the District where its principal offices, its editing, its printing, its subscriber payments and its mailings are accomplished. Hence unlike the factual picture presented by the Evening Star case, this taxpayer is not shown to carry on a significant business activity outside the District. Here as in Evening Star we cannot consider the activity in other states devoted to newsgathering and solicitation of advertisements. The reason is a pragmatic one. Allocation of revenue for tax purposes is an educated guess at best in many instances. Often a workable formula is not the most accurate one and vice versa. The publications business of the Taxpayer is comprised of various operations: newsgathering, advertising solicitation, publication and distribution of a magazine. These are the main elements of the Taxpayer's business from which a formula of allocation must be derived. We acknowledge that all of these activities are vital facets of the business and that the elimination of any one would seriously affect income. In allocating Taxpayer's income for franchise tax purposes, neither the statute nor the Regulations attempt to determine what precise percentage of the income is attributable to each separate facet of the publication process and then allocate it geographically. That is unrealistic if not impossible. Rather, as was stated in Evening Star, in these circumstances we examine Taxpayer's total activity and select that function which fairly reflects the geographical sources of income. In that case we concluded that the essence of the newspaper business, for franchise tax purposes, is the dissemination of news, i. e., the distribution of newspapers, and allocation of income was made according to the situs of subscribers for reasons not present in the instant case. The Evening Star Newspaper Co. maintained offices for newsgathering and for solicitation of advertisements in various other places, aside from the District of Columbia—indeed more widely scattered than in the instant case but since its central function was the editing, publishing, printing and distribution of a news medium we relied on the situs of these activities to guide the imposition of the "business privilege" franchise tax and allowed apportionment only on the basis of significant continuous and direct physical contacts in Maryland and Virginia. This is the controlling distinction between the two cases. Implicit in the adoption of the circulation test in Evening Star was the assumption that location of subscribers of a local daily newspaper fairly reflected the geographical derivation of the newspaper's income in view of the nature of the distribution outside the District. This is not a valid assumption in the case of Broadcasting Publications, Inc.

All of the significant factors by which we can test this Taxpayer's trade magazine business activities for tax purposes, are within the District of Columbia;

there is no direct, continuous physical contact outside the District except the newsgathering and solicitation of advertisers, neither of which was given weight in Evening Star. Therefore its entire income is subject to tax in the District of Columbia.

■ (6) *After the Taxpayer has computed its separate net incomes, i. e., operating and non-operating, is it proper for it to set off the loss from one operation against the net income from the other operation?*

The Tax Court held that the ruling of this court in Evening Star compelled the conclusion that a taxpayer with two types of operations must compute two separate net incomes and is taxed on each separately and may not offset a net loss. This is an incorrect reading of our opinion.

Taxpayer should be allowed to combine its two separate net incomes, i. e., operating and non-operating, to achieve the net income upon which the tax liability will be calculated.

No. 16532 is affirmed in part, reversed in part and remanded for further proceedings.

No. 16535 is affirmed in part, reversed in part and remanded for further proceedings.