**GOLDBERG et al. v. SOUTHERN BUILDERS, Inc.**

No. 10486.

United States Court of Appeals District of Columbia Circuit.

Argued May 12, 1950.

Decided July 10, 1950.

Mr. Herman Tocker, Washington, D. C., for appellants.

Mr. Thomas S. Jackson, Washington, D. C., with whom Messrs. Louis M. Denit, A. Leckie Cox, and Pleasant Baxter Davis, all of Washington, D. C., were on the brief for appellee.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The question here presented is whether Magnolia Gardens, Inc., a foreign corporation, which conducts certain activities in the District of Columbia, is doing or transacting business in this District within the meaning of Section 13—103 of the District of Columbia Code, so that it may be served with process and made amenable to the jurisdiction of our courts.

Plaintiff Goldberg, appellant here, brought suit in the United States District Court for the District of Columbia against South-

ern Builders, Inc., a foreign corporation. A writ of attachment and garnishment was issued and served on Magnolia Gardens, Inc., a corporation of Delaware. Magnolia admitted indebtedness to defendant Southern Builders. Southern Builders appeared specially in the action [1] and moved for an order quashing service of the writ on Magnolia Gardens on the ground that Magnolia was a non-resident foreign corporation not doing business in the District of Columbia. This motion was granted by the trial court, and it is from the order quashing the service that we have this appeal.

The statute provides:

"In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court.

"When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District." (Act of March 3, 1901, 31 Stat. 1419, c. 854, § 1537, as amended, D.C.Code, § 13—103.)

This statute, like analogous laws in many states, is remedial in purpose. Its object is quite clear—it is to enable the District of Columbia courts to exercise jurisdiction over foreign corporations which engage in business activities in the District. The law as to when foreign corporations are subject to suit outside of their state of incorporation was for a long time possessed of a mystic quality which had evolved from the piling of additional fictions upon the base of the original corporate fiction. As a result corporations were able to engage in activity in many states and yet all too often escape liability for such activity because they could not be sued in local forums. Such statutes as the one here involved were enacted in consequence. They rest upon the concept that when a foreign corporation does certain acts within a state (or, here, the District of Columbia), there are sufficient contacts with that state to give its courts, upon proper service of process, personal jurisdiction over that corporation. International Shoe Co. v. State of Washington, 326 U.S. 310, 316–319, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

The statute here involved is concerned with two types of activities by a foreign corporation, activities which are quite distinct quantitatively and qualitatively. The first paragraph relates to the situation where the foreign corporation carries on a consistent pattern of regular business activity within the jurisdiction. The statute provides that in such a situation the foreign corporation, upon proper service, shall be subject to the jurisdiction of the District of Columbia courts generally and not merely for suits arising out of its activity in the District of Columbia. The second paragraph, on the other hand, was intended to cope with those situations where the foreign corporation is not "doing business" within the District of Columbia—that is, where the contacts with the District are only casual and irregular, and thus not sufficient to bring it within the ambit of the first paragraph of the statute. In such a situation the statute provides that when the foreign corporation enters into or performs a contract in the District of Columbia, or commits a tort in the District of Columbia, it shall be subject to the jurisdiction of the District of Columbia courts with regard to suits growing out of that contract or tort.

---

1. Apparently there has been no attempt in the present action to obtain *in personam* jurisdiction over Southern Builders, Inc. Plaintiff seeks to attach and garnish certain assets of Southern Builders in the District. Whether or not Southern Builders is doing business in the District is not now before us.

The problem in this case under the statute is, first, whether the corporation is "doing business" in the District of Columbia, for, if so, there is no question but that the service here is adequate. If the answer is in the negative, then the question arises whether the garnishment of funds owing under a contract executed in the District of Columbia, and to be performed in part in the District of Columbia but primarily in Virginia, is a suit growing out of a contract within the meaning of the second paragraph of the statute.

The term "doing business" is not one possessed of but a single meaning in law. It is used in connection with many different situations and must be characterized and defined according to the context. Thus, what constitutes doing business for purposes of taxation by a state, may be a very different regulation by a state, or for purposes of thing from what constitutes doing business for purposes of process and the subjection of a foreign corporation to the jurisdiction of local courts. Stevens, Corporations, p. 999–1001 (2d Ed. 1949). In general, doing business means continuous, systematic activity. Specifically, in relation to jurisdiction of local courts, it means "some continuous dealings in the state of the forum; enough to demand a trial away from its home." Accordingly, the inquiry is "whether the extent and continuity of what it [the foreign corporation] has done in the state in question makes it reasonable to bring it before one of its courts." Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141. And "it is the cumulative significance of all the activities conducted in this jurisdiction rather than the isolated effect of any single activity that is determinative on the question of doing business in the State." Melvin Pine & Co., Inc., v. McConnell, 273 App.Div. 218, 223, 76 N.Y.S. 2d 279, 283, 10 A.L.R.2d 194, affirmed 298 N.Y. 27, 80 N.E.2d 137.

The facts here involved are undisputed with but minor exceptions. They are, principally, as follows: Magnolia Gardens was incorporated in Delaware for the stated purpose of building housing for rent or sale. The certificate of incorporation was executed in the District of Columbia on September 9, 1947. At the first meeting of the Directors on November 25, 1947, held in the District of Columbia, acquisition of certain property in Arlington, Virginia, was authorized. It was further agreed to open an account for its financial transactions. Subsequently an account was opened in a District of Columbia bank. On November 26, 1947, another Directors' meeting was held in the District of Columbia wherein the officers of the corporation were authorized to enter into a construction contract with Southern Builders, a contract engaging an architect, and a mortgage loan agreement with a District of Columbia trust company. On December 12, 1947, the architect's contract and the mortgage agreement were executed in the District of Columbia, and on December 16, 1947, the construction contract was also executed in the District.[2] All further meetings of the Board of Directors have been held in the District.

The actual construction work was done in Virginia. However, the submission of vouchers by the construction company, the advancement of funds by Magnolia, the provision of funds as security to the construction company, all were done in the District of Columbia. Upon completion of the construction work, the Hall-Johnson Construction Company, Inc.,[3] was appointed rental agent for Magnolia Gardens. The sole business of Magnolia now, that is, its sole source of income, is the collection of rents from the Virginia project. There is an office on the premises of that project, in Arlington. All leases are signed there. The Virginia office is occupied primarily by the resident manager, an agent of the Hall-Johnson Company. Hall-Johnson's primary place of business is, however, the District of Columbia, its offices being located in the

2. This contract with Southern Builders is the contract out of which the indebtedness here garnished arose.

3. The Hall-Johnson Company was the financial backer and sponsor of the project.

Investment Building. Hall-Johnson made its one accounting to Magnolia in the District.

Mr. C. L. Wirsing, a stockholder, director, and the secretary of Magnolia, has an office in the Investment Building, in the District of Columbia, which has his name and the Hall-Johnson name on the door. Magnolia's name does not appear and its sole listing in the Washington telephone directory is at the Arlington address. However, all the books, records, papers, correspondence, checkbooks, etc., of Magnolia are in Mr. Wirsing's custody and kept in the Investment Building office, and Magnolia's checks and correspondence are issued from that office. At least two letters to the Directors of Magnolia giving notice of a meeting have referred to Mr. Wirsing's office in the Investment Building as the "Washington office of the corporation," and several Directors' meetings have been held there. The service here in question was upon Wirsing in that office.

■ It seems clear that Magnolia's contacts with the District have been regular and systematic. It also is clear, with regard to the reasonableness of suit here, that the District of Columbia is probably the most convenient forum to Magnolia. As we have noted, its books, records, officers, all are in the District. While the day-to-day operations of the housing project may be managed in Virginia, unquestionably the general operation and supervision of the corporation's affairs is conducted in the District. Although Magnolia was incorporated in Delaware, the District of Columbia was, in effect its home. Under such circumstances Magnolia was doing business in the District and upon service of process pursuant to section 13—103 was subject to the jurisdiction of the District Court. Ferguson Contracting Co. v. Coal & Coke Ry. Co., 33 App.D.C. 159. See Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926. That being so, there is no question but that the garnishment action was proper, for it is long established that "If there be a law of the state providing for the attachment of the debt, then, if the garnishee be found in that state, and process be personally served upon him therein, * * * the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff, and condemn it, provided the garnishee could himself be sued by his creditor in that state." Harris v. Balk, 198 U.S. 215, 222, 25 S.Ct. 625, 626, 49 L.Ed. 1023, 3 Ann.Cas. 1084.

Since we hold that the service was proper under the first paragraph of section 13—103, and that the court had jurisdiction in the garnishment proceeding, we need not reach the question of whether the service also was proper under the second paragraph of the statute. Accordingly, the order of the District Court quashing the service is

Vacated, and the cause remanded for further proceedings.