**Victor E. ORIGONI, Plaintiff,**

v.

**BULLETIN COMPANY et al.,**
**Defendants.**

**Civ. A. No. 2310–65.**

United States District Court
District of Columbia.

Sept. 16, 1966.

Thomas M. O'Malley, Washington, D. C., for the motion.

John R. McConnell, Philadelphia, Pa., opposed.

HOLTZOFF, District Judge.

This is an action for libel. The publication claimed to be defamatory is an article contained in an issue of the "Sun-

day Bulletin", a newspaper published in Philadelphia, in effect charging the plaintiff, an expert chemist, with divulging his employer's trade secrets to an outsider. The plaintiff resides in Vienna, Virginia, which is within the Washington Metropolitan area. There are three defendants: Bulletin Company, the publisher of the newspaper; District News Company, Inc., the Washington distributor of the newspaper; and Drug Fair of D. C., Inc., which operates stores in the District of Columbia where this newspaper is sold.

The defendant Bulletin Company moves to quash service of the summons and to dismiss the complaint for lack of jurisdiction over the person. The basis of the motion is a claim that this defendant is not doing business in the District of Columbia. It is a corporation organized under the laws of Pennsylvania. D.C.Code, § 13–103, provides that "In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business * * *."

The question to be determined is whether the defendant Bulletin Company is doing business in the District of Columbia.

The pertinent facts are not in dispute. They were elicited in part by answers to interrogatories, and in part by the deposition of the managing editor of the newspaper. The defendant maintains a permanent office in the District of Columbia, and has done so for over 30 years. This office is a suite in an office building in the downtown section of Washington, and is composed of four rooms. Its annual rent is $3,144. A staff is permanently stationed at these headquarters and consists of a Chief of the bureau, two additional reporters and a secretary. Their annual payroll is about $51,000. In addition the employees are paid expenses incurred in connection with the performance of their duties. The office is equipped with four telephones. The defendant's name is listed in the Washington telephone directory, both in the alphabetical and classified sections. Supplies for the Washington office are purchased in the District of Columbia.

The activities conducted at the Washington Bureau of the Bulletin consist of gathering news and forwarding it to the main office in Philadelphia where the newspaper is edited and published. The annual telephone bill is approximately $4,500, most of which is spent on long distance calls for transmission of news from the Washington Bureau to Philadelphia.

The newspaper is sold at newsstands in the District of Columbia. During the fiscal year preceding the institution of this action, its circulation in this District amounted to 309 copies as to the Sunday edition, and 135 copies as to the daily edition. Part of the sales takes place at newsstands within the District and part consists of delivery to subscribers by mail.

The gathering and transmission of news are obviously among the basic activities of a newspaper publisher. The business of a newspaper may be said to consist of a number of steps: gathering of news and its transmission to the publication office; the securing of advertisements; the editing of the contents of the newspaper; and finally its printing and distribution. The first stage— the gathering and transmission of news, is indispensable and fundamental. Without this activity the newspaper cannot be published. Thus an important part of the business of the publisher is regularly and continuously conducted in the District of Columbia at a permanent office located here.

On principle it seems clear that the defendant Bulletin Company is doing business in the District of Columbia and, therefore, is subject to service of process here and to jurisdiction over its person in this Court. The situation is somewhat analogous to that of a manufacturing concern that has its principal factory in State A, and also has a branch plant in State B, where some component parts of the finished product are fabri-

cated and from which they are transmitted to the main plant in State A. Manifestly, under such circumstances, such a concern would be said to be doing business in State B, as well as in State A, and, therefore, to be subject to service of process in State B, and to jurisdiction over its person in the local courts.

An entirely different situation is presented on those many occasions in which a newspaper temporarily sends one or more representatives to a particular locality in order to observe and report a local event or a series of occurrences and then withdraws its personnel and maintains no permanent office within the jurisdiction. In such an instance it may well be said that the newspaper does not do business in that State, and that it would be unfair and unjust to subject its publisher to suit within that jurisdiction.

One may well wonder whether the defendant would contend if there were a dispute between it and one of its Washington employees over salaries or expenses, or a controversy with one of its local suppliers over a payment for office supplies, that the employee or supplier claimed to be aggrieved would have to go to Philadelphia to bring suit, and would not be in a position to do so in the District of Columbia. The fact that the present action is a suit for libel brought by a resident of the Washington Metropolitan area, does not lead to the invocation of a different principle. So, too, no reason is discernible for applying a different doctrine to a newspaper publisher than that which governs the transactions of persons and concerns engaged in other lines of endeavor.

Counsel for the defendant presented no argument based on principle or reasoning, but relied solely on two decisions of the Court of Appeals for this Circuit. The first is Neely v. Philadelphia Inquirer Co., 61 App.D.C. 334, 62 F.2d 873, decided in 1932, in which it was held that the publisher of the "Philadelphia Inquirer" was not doing business in the District of Columbia. It had one Washington correspondent for the gathering of news, who occupied two rooms in an office building in this City. The second case is Layne v. Tribune Co., 63 App. D.C. 213, 71 F.2d 223, cert. den. 293 U.S. 572, 55 S.Ct. 83, 79 L.Ed. 670, in which it was held that "The Chicago Tribune" was not doing business in the District of Columbia. The Court relied on its prior decision in the *Neely* case. In neither of these cases was there any evidence, so far as the opinion indicates, as to the amount of money expended by the newspaper in the District of Columbia. In the instant case the expenditures are substantial as indicated above.

A study and an analysis of the developments in this field subsequently to these two decisions, leads this Court to the conclusion that the *Neely* and *Layne* cases no longer represent the law and must be deemed to have been overruled *sub silentio*. The changes in the principle as to what constitutes doing business within a State on the part of a foreign corporation, and the adoption of a much more liberal doctrine than that which had formed the basis for the *Neely* and *Layne* decisions, was inaugurated by the opinion of Mr. Chief Justice Stone in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which was decided on December 3, 1945,—eleven years subsequently to the decision of the Court of Appeals in the *Layne* case. The *International Shoe Company* was a Delaware corporation engaged in the manufacture and sale of shoes and having its principal place of business in St. Louis, Missouri. It maintained establishments in several States, but none in the State of Washington. It did not have any office and did not keep any stock of merchandise in that State. It employed a number of salesmen in the State of Washington, who were under the direct supervision of the St. Louis office. These salesmen resided in Washington, and were compensated by commissions based on the amount of their sales. The corporation supplied them with a line of samples, each consisting of one shoe of

a pair. On occasion they rented rooms for exhibiting samples. The Supreme Court of the State of Washington found that the corporation was doing business within that State. The decision was affirmed by the Supreme Court of the United States, which held that there was no violation of due process of law in ruling that the activities of the company constituted doing business within the State. On that aspect of the controversy Mr. Chief Justice Stone wrote that it was sufficient if the defendant had certain minimum contacts within the State, such "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'," (p. 316, 66 S.Ct. p. 158). Mr. Justice Black wrote a concurring opinion. There were no dissents.

■ In Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447, 72 S.Ct. 413, 96 L.Ed. 485, in which Mr. Justice Burton wrote the opinion, the defendant corporation was organized under the laws of the Philippine Islands and owned mining property there. Its operations were halted during World War II because of the occupation of the Islands by the Japanese. In the interim the President of the Company returned to his home in Ohio and maintained an office where he conducted both his personal affairs and also did many things in behalf of the Company, such as carrying on its correspondence, keeping its office files, and the like. The Supreme Court of Ohio held that the due process clause of the Fourteenth Amendment prohibited the Ohio courts from exercising jurisdiction over the corporation. The Supreme Court of the United States reversed the judgment of the State court. Mr. Justice Burton stated (p. 444, 72 S.Ct. p. 418) that the conception relating to the service of process on foreign corporations had been modified in recent decisions and particularly in International Shoe Company v. State of Washington, supra. His opinion continued:

"Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative."

■ In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, in which Mr. Justice Black wrote the opinion for a unanimous bench, a resident of California bought a life insurance policy from an Arizona insurance company, whose principal place of business was in Texas. It maintained no office and had no agents in California. The transaction was handled entirely by mail. The beneficiary of the policy brought suit against the insurance company in a California court. Process was served by substituted service, specifically by registered mail, directed to the defendant's principal place of business in Texas. The plaintiff recovered judgment. Unable to collect it in California, the plaintiff brought suit on the judgment in a Texas court. The Texas courts refused to enforce the judgment, holding that it was void under the Fourteenth Amendment. The Supreme Court held on certiorari that the California court had properly exercised jurisdiction over the insurance company and that, therefore, the Texas courts erred in refusing to give the judgment full faith and credit. The Supreme Court indicated that a foreign corporation may be subjected to a judgment *in personam* if it has certain minimum contacts with the State, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice" (p. 222, 78 S.Ct. p. 201). The opinion contains the following significant observations:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the

years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity", (pp. 222–223, 78 S.Ct. p. 201).

Turning now to the later cases decided by the Court of Appeals for this Circuit, the first is Goldberg v. Southern Builders, 87 U.S.App.D.C. 191, 184 F.2d 345. In that case a Delaware corporation acquired real property in Virginia and carried on construction work in that State. It maintained an office, however, in the District of Columbia, where it conducted some of the financial aspects of the enterprise. It was held that since the corporation had regular and systematic contacts with the District of Columbia, it was to be deemed to be doing business in this jurisdiction and, therefore, was subject to service of process.

A later case which marks the most significant development in this branch of the law in the District of Columbia, is Fiat Motor Company v. Alabama Imported Cars, Inc. 110 U.S.App.D.C. 252, 254, 292 F.2d 745. In that case Judge Burger wrote the opinion and Judges Wilbur K. Miller and Bazelon concurred. Fiat Motor Company was a New York corporation with its principal place of business in New York City. It imported Fiat automobiles and sold them to wholesale distributors in this country. One of the distributors was the Roosevelt Automobile Company, a Delaware corporation, with its principal place of business in the District of Columbia. An Alabama corporation, which was a retail dealer in Fiat cars, brought suit in this Court against Fiat and Roosevelt as co-defendants. Service of process on Fiat was accomplished by service on the President of Roosevelt within this District. Fiat moved to quash service. Its

motion was denied and an interlocutory appeal allowed. The Court of Appeals affirmed the order of the District Court.

It appeared that Fiat had made an agreement with Roosevelt providing that the latter was to be the authorized distributor of Fiat motor vehicles for the District of Columbia and adjoining States. By this contract Roosevelt was obligated to promote the sales of Fiat products, to use advertising materials provided by Fiat, to establish and equip places of business in the District of Columbia, and to keep and furnish to Fiat on request such records and reports as Fiat would require, as well as to maintain certain stated capital and to employ certain personnel. Fiat retained control over the designation of local Fiat dealers by Roosevelt.

The Court observed that these and other provisions of the agreement manifested a continuous business relationship, involving the supervision and control by Fiat of numerous details of the business of Roosevelt. The Court concluded that "this relationship subjects Fiat to service in the District" of Columbia. The Court, refering to the expression of Mr. Chief Justice Stone in International Shoe Co. v. Washington, supra, stated (110 U.S.App.D.C. p. 254, 292 F.2d p. 747):

"Assuming that in the absence of controlling federal statute the matter is governed by the standards of 'fair play and substantial justice,' Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir. 1954, 212 F.2d 147, the contacts of Fiat with the District are of such substantial, continuing, and directory nature as to warrant the holding that it is doing business here in a manner which makes it subject to service of process in this jurisdiction. McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223."

The contacts of Fiat with the District of Columbia were much more tenuous than those of defendant Bulletin Company in the case at bar. Fiat maintained no office, or permanent representa-

tive within the District of Columbia, and yet because of its continuous control and supervision over the details of the business of its distributor in the District, it was held to be doing business within the District and, therefore, subject to service of process. In the instant case the defendant maintains a regular office and a permanent staff of employees within the District, who continuously carry on one of the necessary activities and aspects of its daily business.

It seems impossible to reconcile the *Neely* and *Layne* cases with the *Fiat Motor Company* case and, therefore, the former must be deemed to have been overruled *sub silentio*.

■ The Court reaches the conclusion from the foregoing discussion that the defendant Bulletin Company must be deemed to have been doing business in the District of Columbia and, therefore, is subject to service of process. It is not questioned that if it is subject to service of process, service was properly made.

From a practical standpoint and considerations of substantial justice, any other conclusion would seem inequitable. The standards of "fair play and substantial justice", a principle established in this branch of the law by Mr. Chief Justice Stone in the *International Shoe Company* case, seem to require the result that this Court has reached. The plaintiff is a resident of the Washington Metropolitan area. The defendant has a regular office in this District, permanently maintained by a staff of employees, in which an important part of its business and functions are transacted and where it expends a considerable amount of money. There is nothing unfair in subjecting the defendant to responding to the process of the local courts and defending a suit here. On the other hand, it would be burdensome to require the plaintiff to go to Philadelphia in order to seek to vindicate his rights.

Motion of defendant Bulletin Company to quash service of summons and dismiss the complaint is denied.