**STATE LOAN AND FINANCE CORPORATION** (Successor by Merger to Lincoln Service Corporation), Petitioner,

v.

**DISTRICT OF COLUMBIA**, Respondent.

**No. 20273.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 7, 1967.

Decided June 2, 1967.

Petition for Rehearing En Banc
Denied Aug. 17, 1967.

Mr. Carl F. Bauersfeld, Washington, D. C., with whom Mr. Robert Ash, Washington, D. C., was on the brief, for petitioner.

Mr. Robert E. McCally, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Milton D. Korman, Principal Asst. Corporation Counsel at the time the brief was filed, Hubert B.

Pair and Henry E. Wixon, Asst. Corporation Counsel, were on the brief, for respondent. Mr. Charles T. Duncan, Corporation Counsel, also entered an appearance for respondent.

Before FAHY,[*] Circuit Judge, BASTIAN, Senior Circuit Judge, and TAMM, Circuit Judge.

TAMM, Circuit Judge:

The petitioner State Loan and Finance Company seeks review [1] in this case of a decision of the District of Columbia Tax Court which increased the petitioner's District of Columbia franchise taxes on its net income derived from sources within the District of Columbia for the fiscal year ended June 30, 1958, and for the taxable period July 1, 1958, through March 16, 1959. The petitioner is a Delaware corporation which merged with the Lincoln Service Corporation on September 16, 1959, and assumed all of Lincoln's assets and liabilities as of that date. During the taxable periods here involved, the petitioner, hereinafter called Lincoln, was a holding company whose principal place of business was in the District of Columbia. It was the owner of all, or almost all, of the corporate stock of several subsidiary corporations engaged in the business of making small loans to individual borrowers in the states in which their offices were located. The subsidiaries engaged in no other business except the small loan business. Each subsidiary had to be licensed by the state in which its office was located, in order to carry on the small loan business. At the end of the fiscal year ending June 30, 1958, the subsidiaries operated 103 small loan offices in 11 states; as of March 16, 1959, they operated 105 loan offices in 11 states. None of the subsidiaries conducted the business of lending money in the District of Columbia, *id est*, no loan offices were located in the District of Columbia, nor did they own any properties or have any payroll here.

---

* Circuit Judge Fahy became Senior Circuit Judge on April 13, 1967.

1. D.C.Code § 47–2404 (1961).

Lincoln derived gross income from three sources: (1) interest on loans to subsidiaries, (2) administrative fees paid by the subsidiaries for supervision and management services rendered by Lincoln, and (3) dividends declared by the subsidiaries and received by Lincoln on the capital stock it held in the subsidiaries.[2]

Each of Lincoln's subsidiaries was strictly controlled by laws and regulations of the state in which the loans were made. The subsidiaries, in accordance with the requirements of state law, kept in their home offices the borrower's note, the chattel mortgage, the application for the loan, the ledger card, and a statement of the transaction. The managers of the subsidiaries were in charge of the loan offices and had complete authority to reject a loan, as well as in determining the collection procedure to be followed. The subsidiaries belonged to local civil organizations and maintained bank accounts in the cities where they were located. The managers had complete discretion in the operating of the loan offices. They hired, trained, and discharged their employees; they paid expenses such as rent, heat, light, telephone, administrative and supervisory fees, and local taxes from their local bank accounts; and they determined money needs of the subsidiaries and borrowed funds from Lincoln for operational purposes. Money in the local bank account could be withdrawn upon the joint signature of the manager and cashier. Lincoln did not have the authority to draw on these accounts, but an officer of the subsidiary who was physically present in the District of Columbia also had authority to draw on the local account of the subsidiary.

During the period here involved, the subsidiaries of Lincoln had approximately 350 employees, all of whom worked outside of the District of Columbia, while Lincoln had 20 employees. Lincoln supplied supervisory and management services to its subsidiaries located in the several states and charged and received substantial sums for such services. These services were performed by supervisors employed by Lincoln, and these supervisors advised the personnel of the subsidiaries and reported to Lincoln. The supervisors had offices, or were headquartered, in the states in which the small loan subsidiaries were located. Each supervisor supervised 8 to 10 small loan offices. The supervisors would visit each office, investigate all loans that had been made since the last visit, review with the manager of the subsidiary its activities, calculate what had been accomplished, and endeavor to correct any errors that may have been made. In addition, the supervisor trained and instructed the other personnel in the subsidiary's office. Virtually all of the services rendered by the supervisors to the subsidiaries were rendered outside the District of Columbia. Lincoln, in its office in the District, performed services for its subsidiaries such as accounting, purchasing, advertising, the printing of forms, preparation of income tax returns, and the keeping of the formal books and records, including the general ledgers. Lincoln had no written agreement concerning the management services to be rendered for the subsidiaries; the fee paid by each subsidiary was based on the amount of the subsidiary's outstanding loan balance. Lincoln corporate officers were also officers of the subsidiaries. All of the officers of the subsidiaries were located in the District of Columbia. Almost all, if not all, of the subsidiaries' directors were either officers or directors of Lincoln and were located in the District of Columbia. All the directors and stockholders meetings for both Lincoln and the subsidiaries were held in the District. All the dividends were determined and paid in the District of Columbia.

2. About 35% of the 105 subsidiaries had a stockholder other than Lincoln. Most minority stockholders held 3 shares, never more than 12.

The amounts received by Lincoln during the taxable periods were as follows: (For detailed tax computation, see Appendix A).

| | Fiscal Year Ended June 30, 1958 | Period Ended March 16, 1959 |
|---|---|---|
| Interest | $986,806.88 | $595,197.03 |
| Administrative Fees | 900,768.57 | 650,035.53 |
| Dividends | 689,890.14 | 700,159.00 |
| Total | $2,586,465.59 | $1,945,391.56 |

The question before the Tax Court was whether the interest, dividends, and administrative fees received by Lincoln from its subsidiaries were taxable under the District of Columbia corporate franchise tax, D.C.Code §§ 47–1571, 47–1571a (1961 ed.). Section 47–1571 of the Code provides that "taxable income" shall mean "the amount of net income derived from sources within the District within the meaning of sections 47–1580 to 47–1580b." Section 47–1571a of the Code provides that:

"For the privilege of carrying on or engaging in any trade or business within the District, and of receiving income from sources within the District there is hereby levied for each taxable year a tax at the rate of 5 per centum upon the taxable income of every corporation whether domestic or foreign."

Section 47–1580 provides that:

"It is the purpose of this article to impose * * * (2) a franchise tax upon every corporation * * * for the privilege of carrying on or engaging in any trade or business within the District and of receiving such other income as is derived from sources within the District."

The Tax Court held:

"the interest and dividends paid or issued by them [the subsidiaries] were income from sources within the District under principles announced in the *Virginia Hotel Company* and *Consolidated Title Corporation* cases and under Section 47–1571(a) [47–1571a] D.C.Code 1960 Edition."

No question is raised before this court now of the Tax Court's findings in regard to the sources and allocation of the administrative fees received by Lincoln from the subsidiaries. The Tax Court found that the services for which the fees were received were performed partly within and partly without the District of Columbia. On the basis of section 10–2(c) of the regulations pertaining to the District of Columbia corporate franchise tax, which provides for allocation of the income on the basis of the site at which the business was carried out, and the stipulation of parties in respect to the compensation of officers and employees of Lincoln who were engaged in supervision of the subsidiaries, including the time spent in performing that service both within and without the District of Columbia, the Tax Court found that 42.47 per cent of the administrative services was performed within the District of Columbia for the fiscal year ended June 30, 1958, and 34.87 per cent for the fiscal year ended June 30, 1959. It thereupon applied these percentages to the total administrative fees received to determine the amount properly includible in gross income for the respective periods.

The sole issue before us now for resolution is: What was the source [3] of the

3. See Square D Co. v. Kentucky Bd. of Tax Appeals, 415 S.W.2d 594 (Ky.1967). In this case, the two appellants were foreign corporations doing business in Kentucky; neither of them had their "principal office or commercial domicile

dividends and interest payments received by the parent Lincoln? If it was "income from sources within the District,"[4] then petitioner must pay the franchise tax on it. The Tax Court found that both interest and dividend income had its source within the District. That court found, on the basis of the facts presented, that each subsidiary had acquired a commercial domicile in the District of Columbia.

The Tax Court discussed, first, the rule in regard to finding the source of dividend and interest income:

"*Interest and Dividends.* These two classes of revenue are combined for

discussion because the rules or principles relating to the source of interest and dividend income are the same, or to be more exact, one and the same rule or principle applies to both. That rule or principle in respect of interest is that the source of interest income is the domicile of the debtor, and as to dividends it is the domicile or locale of the paying or issuing corporation."

The Tax Court then applied these rules in light of its commercial domicile determination and came to the conclusion that both interest and dividend income had their source within the District of Columbia for franchise tax purposes.

in [that] state." Each owned all the capital of one or more foreign corporations. The question presented was whether dividend income from these wholly owned corporations must be included in appellants' taxable net income for the purpose of apportioning income taxes payable to the State of Kentucky, *id est,* did the state have a right to "reach for a portion of this income?" The statute, Kentucky Revenue Statute 141.010(11), defines taxable net income of corporations as " 'net income' derived from business done, property located, activities, or sources in this state * * *." When a corporation is engaged in activity both within and without Kentucky and it is not possible to segregate the income, the legislature had provided a method and formula for allocating to Kentucky a proportionate share of the taxable net income. The companies did not object to inclusion of income realized from interrelated business activities outside the state in the apportionment procedure. They contended that the separately identifiable dividend income from wholly owned corporate subsidiaries operating in foreign jurisdictions could not be included in computing the overall taxable net income. The Court of Appeals for Kentucky noted at 598, first, "that it is beyond the power of a state to tax property located in other states because such taxation would violate either, or both, the commerce clause or the due process clause of the Constitution of the United States." (Citations omitted.) The court pointed out that the apportionment is designed to meet the due process requirement of a "nexus" between the tax and the transaction within a state for which the tax is an exaction. "It thus becomes apparent that Kentucky cannot tax, either directly or indirectly separable income of

a foreign corporation which was not produced in some recognizable sense by business activities in Kentucky." 415 S.W. 2d at 599.

The court rejected the argument that the corporate relationship of parent and subsidiary caused in this case an integration of the overall business operations into a "unitary operation," such that the overall business in Kentucky could have contributed to the production of the dividend income. "Even though subsidiaries are engaged in a similar or related business, the corporate separation must be recognized unless it is a mere sham or the subsidiaries' operations [have lost] their independent identity by reason of exceptional integrated business relationships." 415 S.W.2d at 601.

The court, finding that the income was not produced in Kentucky and that there was not a unitary operation present, therefore reversed the Kentucky Board of Tax Appeals and held for the appellant corporations. In so doing, they indicated that if there were any doubt about the conclusion, they would be required to "construe these statutes most strongly against the government and in favor of the taxpayers." 415 S.W.2d at 602. (Citations omitted.) "Where there is a serious question as to the constitutional right of the state to tax income having a foreign source, we think the state has the burden of showing by convincing evidence that the separately identifiable foreign income has a significant source in Kentucky by reason of integrated operations which are not fairly severable." 415 S.W.2d at 602.

Accord, Humble Oil & Ref. Co. v. Calvert, Tex.Civ.App., 414 S.W.2d 172 (1967).

4. D.C.Code § 47–1571a (1961).

■ The rule in this jurisdiction in regard to the source of interest on a note is clear. The Tax Court, in its opinion in the *Virginia Hotel* case, reversed on other grounds,[5] there indicated that the:

"(S)ource of interest income is the obligor and its situs is his residence. * * * Resort must be had to the ordinary meaning of the term 'sources.' As Judge Goodrich said in Lord Torres, 25 BTA 154, 161, 'the commonly accepted definition of the term "source" is that from which anything comes forth, regarded as its cause or origin.'" [Citations omitted.]

■ The rule in regard to the source of dividends is equally clear in this jurisdiction. The District of Columbia Tax Court in Consolidated Title Corp. v. District of Columbia,[6] there indicated that the source of the dividends was the domicile of the paying or issuing corporation.

"The principles relating to the situs of dividends are essentially the same as those concerning the taxable locale of interest. Statutes and treaties treat of them together as having the same characteristics or natures. Both involve the use of money and a person or corporation obligated to pay for its use or retention. The domicile of the obligor in both instances is a taxable situs, which does not mean, of course, that some other jurisdiction may not also impose taxes on or in relation thereto. Curry v. McCanless, [307

U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162], *supra;* Graves v. Elliot [32 U.S. 885] *supra,* and State Tax Com. of Utah v. Aldrich [306 U.S. 747], *supra."*

This reservation in the last sentence refers to the constitutionality of the imposition by two states of a tax on the transfer of the same intangibles, as well as the possibility of double taxation on intangibles as in *Wheeling Steel Corp., infra,* something which is neither questioned nor at issue in this case.

The Tax Court, after applying the correct rules for the ascertainment of the source of dividends and interest income, here incorrectly applied the commercial domicile theory as laid down in Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936); First Bank Stock Corp. v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061, 113 A.L.R. 228 (1937); and Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090 (1942), to find that the income sources were in the District of Columbia.[7]

We are not without some guidance in the meaning of "source" as used in the statute in regard to dividends and interest source. In Consolidated Title Corp. v. District of Columbia, *supra,* which involved a corporation organized under the laws of Maryland, and which corporation had its statutory office in Baltimore but kept all of its books and records, transacted all of its corporate business,

---

5. District of Columbia v. Virginia Hotel Co., 92 U.S.App.D.C. 186, 204 F.2d 390 (1953), reversing Virginia Hotel Co. v. District of Columbia, D.C. Tax Court Docket No. 1302–5, Opinion No. 819 (1952).

6. 107 U.S.App.D.C. 221, 275 F.2d 885 (1960), affirming D. C. Tax Court, Docket No. 1642–1660, Opinion No. 962 (1959).

7. The Tax Court also cited Ferguson Contracting Co. v. Coal and Coke Ry., 33 App.D.C. 159 (1909), but this case involved service of process and the question of whether a corporation was doing sufficient business in the District to make such service effective. As this court has said:

"The term 'doing business' is not one possessed of but a single meaning in law. It is used in connection with many different situations and must be characterized and defined according to the context. Thus, what constitutes doing business for purposes of taxation by a state may be a very different regulation by a state, or for purposes of thing [sic] from what constitutes doing business for purposes of process and the subjection of a foreign corporation to the jurisdiction of local courts." Goldberg v. Southern Builders, Inc., 87 U.S.App.D.C. 191, 193, 184 F.2d 345, 347 (1950). [Citations omitted.]

and held all of its shareholders and directors meetings in the District of Columbia, this court had before it the issue of dividend source. The corporation was organized to carry out a court-approved reorganization of a bankrupt corporation. Its entire income consisted of dividends from three subsidiary corporations, all of which were organized under the District of Columbia laws and had their principal offices and business in the District, where they engaged in the real estate title examination and insurance business.

In regard to dividend source, Judge Edgerton said:

"The Tax Court held, and we agree, that petitioner received its income from 'sources within the District' and was therefore subject to these taxes. The 'sources' were petitioner's subsidiary corporations. Since they had their principal offices and businesses in the District, they were 'within the District'; they were ' "domiciled" therein, corporately and commercially', as the Tax Court found. It is immaterial that some of their business was done elsewhere. We are not concerned with the sources of *their income,* but only with the sources of petitioner's income. Cf. Eastman Kodak Co. v. District of Columbia, 76 U.S.App.D.C. 339, 340, 131 F.2d 347, 348. We need not consider whether petitioner was 'engaging in * * * business within the District' within the meaning of the franchise tax. Cf. District of Columbia v. Virginia Hotel Co., 92 U.S.App. D.C. 186, 187, 204 F.2d 390, 391. Affirmed." Consolidated Title Corp. v.

District of Columbia, 107 U.S.App.D.C. at 222, 275 F.2d at 886.

 The court clearly indicated that the source of income was the place where the "principal offices and businesses" were located. The search for such a place in the context of this statute is a search for one place, not many. The concept of commercial domicile is one leading to more than one domicile for a corporation at one and the same time, while the doctrine of domicile taken in the normal sense [8] is a unitary concept— one of a single, exclusive domicile. The plain meaning of source, as used in this statute, the interpretation of domicile in the context of source of dividend income in *Consolidated Title Corp., supra,* and common sense all require that the question of source or domicile in the case of dividend and interest source is one which is resolved by finding the "principal office and business" of the subsidiary.[9] In this case, there is no question that the principal offices and businesses were located outside the District of Columbia and were located in the states where the loans were made and the payments thereon received. The facts are clear that the principal place of business for each subsidiary was not in the District of Columbia, and the argument that for source purposes there could be more than one source—one within and one without the District of Columbia—is answered by pointing out that by its clear meaning this cannot be. Any other interpretation would also make the statute suspect of multiple taxation, something the Supreme Court has recently shown concern for in regard to this same franchise tax

---

**8.** Mr. Justice Holmes, in Williamson v. Osenton, 232 U.S. 619, 625, 34 S.Ct. 442, 443, 58 L.Ed. 758 (1914), said of domicile: "In its nature it is one; and if in any case two are recognized for different purposes it is a doubtful analogy."

**9.** The determination of a source, which in the context of this case means the determination of the principal place of business, is one that the statute requires; such determination is made easy by the facts in this case. On other facts, such determination might be very difficult;

however, such a determination is one which this statute requires, and that is the job that must be done by those who interpret the statute, albeit how hard that may be. A franchise tax statute with this wording was selected to obtain much needed revenues for the District of Columbia. While other types of taxing statutes could have been selected, they were not. Our task is to select the proper meaning and scope for this statute, not what could have been taxable under some other statute.

statute. General Motors Corp. v. District of Columbia, 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68 (1965). In that case, the Supreme Court construed certain regulations issued by the Commissioners under the franchise tax statute as being beyond their authority and thus avoided the necessity of reaching the constitutional question.

Because of our interpretation as to the meaning of source as used by the statute,[10] we need not reach the difficult constitutional questions [11] of whether the use of commercial domicile in a determination of source within this statute would result in an unconstitutional apportionment within the *General Motors* case, *supra*,[12] or would be under General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564 (1964), a tax without apportionment,[13] or without "nexus" within the state.

■■ Lincoln was engaged in some business or trade in the District,[14] *id*

---

10. See District of Columbia v. Davis, 125 U.S.App.D.C. 311, 371 F.2d 964, cert. denied 386 U.S. 1034, 87 S.Ct. 1487, 18 L. Ed.2d 598 (1967), where this Court of Appeals also based its decision on statutory construction of the tax statute to avoid constitutional questions.

11. General Motors Corp. v. Washington, 377 U.S. 436, at page 449, 84 S.Ct. 1564, at page 1572, 12 L.Ed.2d 430 (1964), Justice Brennan dissenting, said:
"This case presents once again the thorny problem of the power of a State to tax the gross receipts from interstate sales arising from activities occurring only partly within its borders. In upholding the Washington gross receipts tax the Court has, in my judgment, confused two quite different issues raised by the case, and in doing so has ignored a fatal defect in the Washington statute.
"In order to tax any transaction, the Due Process Clause requires that a State show a sufficient 'nexus between such a tax and transactions within the state for which the tax is an exaction.' Northwestern States Portland Cement Co. v. [State of] Minnesota, 358 U.S. 450, 464, 79 S.Ct. 357, 3 L.Ed.2d 421, [67 A.L.R.2d 1292]. This question, which we considered in McLeod v. J. E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304, and Norton Co. v. Department of Revenue, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517, (1964), is the most fundamental precondition on state power to tax. But the strictures of the Constitution on this power do not stop there. For in the case of a gross receipts tax imposed upon an interstate transaction, even though the taxing State can show 'some minimum connection,' *Northwestern States Portland Cement Co.*, *supra*, 358 U.S. at 465, 79 S.Ct. at 366, the Commerce Clause requires that 'taxation measured by gross receipts from interstate commerce * * * [be] fairly apportioned to the commerce carried on within the taxing state.' Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 256, 58 S.Ct. 546, 549, 82 L.Ed. 823, [115 A.L.R. 944]. See J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 [117 A.L.R. 429.]"

12. The Court said at page 561, 85 S.Ct. at page 1161: "While the Court has refrained from attempting to define any single appropriate method of apportionment, it has sought to ensure that the methods used display a modicum of reasonable relation to corporate activities within the State."

13. General Motors Corp. v. Washington, *supra*, at 448, 84 S.Ct. at 1571.
"The tax that Washington levied is measured by the wholesale sales of the respective General Motors divisions in the State. It is unapportioned and, as we have pointed out, is, therefore, suspect. We must determine whether it is so closely related to the local activities of the corporation as to form 'some definite link, some minimum connection between a state and the person, property or transaction it seeks to tax.' Miller Bros. v. State of Maryland, 347 U.S. 340, 344–345, 74 S.Ct. 535, 98 L.Ed. 744 (1954)."

14. Because it was so engaged, the proviso of D.C.Code § 47–1580 (1961), which reads:
"*Provided However*, [t]hat in the case of any corporation, the amount received as dividends from a corporation which is subject to taxation under this article, and, in the case of a corporation not engaged in carrying on any trade or business within the District, interest received by it from a corporation which is subject to taxation under this article shall not be considered as income from sources within the District for the purposes of this article. The measure of the franchise tax shall be that portion of the net income of the

*est,* that of supervising its subsidiaries, and for that activity it became subject to the franchise tax.[15] It has not been suggested, nor would it be true, that Lincoln in this case was engaged in a business or trade solely because it received interest or dividend payments.[16] The receipt of interest and dividends is taxable in this case under the franchise tax statute only if its source was, in fact, in the District of Columbia. Mere receipt alone, without a showing of more, would not be covered by the "engaging in any business or trade" provision, because such receipt is simply not engaging in any business or trade. This means that if a company is in the business of lending money within the District, the "engaging" provision would apply. It would apply because the company was so engaged, but a mere showing of the receipt of interest is not enough to bring that action within this section.

Our learned brother, although agreeing with our result that in this case the dividend and interest source as used in section 47–1580 of the Code was not within the District of Columbia, would, nevertheless, remand for a further hearing to determine whether Lincoln was engaging in a business or trade in the District of Columbia within the first part of (2) of section 47–1580 by loaning money to or receiving dividends from its

subsidiaries. We cannot agree; first, because it would seem impossible that any more relevant facts could be elicited than have already appeared in the extensive record before us now in regard to the activities of Lincoln and its subsidiaries and, secondly, it is clear to us beyond peradventure that the Tax Court made an implicit finding on the basis of the facts before it that Lincoln was not engaged in a business or trade within the meaning of the franchise tax statute by receiving interest and dividends from its subsidiaries. It is of course true that no explicit finding to that effect appears in the opinion of the Tax Court, and the better procedure would be to make such a finding. We may now do what was done by this court in the *Virginia Hotel* case, *supra,* and that is, we may look to the whole opinion. When we do, we there find an implicit finding that Lincoln was not engaged in any business or trade within the meaning of the franchise tax statute by receiving interest or dividend income from its subsidiaries on the facts as presented in this case. The items cited by Judge Fahy support our view in this regard, because these and other such items (as for example, the answer of the Government to the complaint filed in the Tax Court to appeal the increased assessments) show that before the Tax Court it was contended [17] that Lincoln was either engaged

corporation or unincorporated business carried on or engaged in within the District and such other net income as is derived from sources within the District * * *."
would give relief only in regard to dividends received by Lincoln if the subsidiaries became subject to the franchise tax, a question which is not before us, but which raises the interesting possibility that perhaps the District might have sued the subsidiaries. The question of the tax responsibilities of the subsidiaries' activities would have been then fully ventilated. Such an action would have as well afforded them an opportunity to apportion their income between the business done within the District of Columbia and that done without; and of course, Lincoln would then have available to it the deduction of the dividends previously taxed under the proviso quoted above.

15. Lincoln concedes in its brief that it has a commercial domicile in the District of Columbia, and it did file returns for the taxable period in question covering franchise taxes for the portion of income received for the services rendered the subsidiaries in the District.

16. Compare Robb, Inc. v. District of Columbia, 80 U.S.App.D.C. 246, 152 F.2d 283 (1945).

17. The Tax Court indicated the following: "As will be seen from Lincoln's computation of its net taxable income, its revenue or gross income consisted of three kinds or classes, namely, 'interest,' 'administrative fees' for supervisory and managerial services performed for its subsidiaries, and 'dividends.' The ques-

in business wholly within the District of Columbia or it derived all of its income from trade or business activities conducted within the District. The question which he would now remand for determination was clearly and precisely raised before, and decided by, the Tax Court. Further still, the case which he cites as authority was also cited by the Tax Court,[18] whose member sole, incidentally, was presiding there during the whole of the proceeding and remand in that case. To now imply that the Tax Court disregarded that case is not very persuasive. It should be noted too that the concession in opening argument by counsel for Lincoln stands in contradistinction to the testimony of the vice president of Lincoln, who indicated that only a slight profit was made on the pure interest income received on the money loaned to the subsidiaries and that he didn't know whether there was a "profit" after the "other expenses" incurred in obtaining the money were charged against the "profit." These inconsistencies, as well as others, merely show that the issues were present to be decided, and they were decided.

As much of the Tax Court's opinion as imposes the District of Columbia franchise tax upon dividend and interest received by petitioner from its subsidiaries during the fiscal year ending June 30, 1958, and the period July 1, 1958, to March 16, 1959, is reversed. The case is remanded to the Tax Court to enter judgment for the petitioner consistent with this opinion for the refunds due, plus interest, on the taxes paid on divi-

dends and interest income for the taxable periods here involved.

It is so ordered.

FAHY, Circuit Judge (dissenting):

Having held that the interest and dividends earned by Lincoln are not subject to the franchise tax as "such other net income as is derived from sources within the District," D.C.Code § 47–1580, this court, I believe, should remand the case for further proceedings in the Tax Court. There remains for determination the question whether the interest and dividends, or any part thereof, should be used in measuring the franchise tax to be paid on that portion "of the net income * * * fairly attributable to any trade or business carried on or engaged in within the District." D.C. Code § 47–1580. And see District of Columbia v. Virginia Hotel Co., 92 U.S. App.D.C. 186, 204 F.2d 390.

Even Lincoln concedes that some of the interest it earned was taxable by the District of Columbia. Its attorney stated in his opening statement that Lincoln,

> was engaged in the business of loaning money and rendering management services to the subsidiary corporations which were located in the States of Florida, Georgia, Kentucky, Louisiana, Maryland, Ohio, Pennsylvania, South Carolina, Texas, Virginia and West Virginia.

> * * * * * *

> In filing its District of Columbia Corporation Franchise Tax Return for the periods here involved, the taxpayer treated the interest received and administrative fees as subject to appor-

tion which here presents itself is 'where was the source or locale of that income?' The Court will now proceed to answer that question."

18. The Tax Court indicated the following: "While it is true that Ferguson Contracting Co. v. Coal and Coke Ry. Co., *supra*, involved the service of· process, and the cited three Supreme Court cases sustained the taxation of the corporation's intangibles by the states in which they had acquired a commercial

domicile, the Court is of the opinion, and here holds that the commercial domicile of the subsidiaries in the District of Columbia was sufficient to support a ruling that the interest and dividends paid or issued by them were income from sources within the District under the principles announced in the *Virginia Hotel Company* and *Consolidated Title Corp.* cases and under section 47–1571a, District of Columbia Code, 1960 Edition, which provides: * * *." [Citations omitted.]

tionment in the District of Columbia and dividends as not subject to apportionment because they were from sources wholly without the District of Columbia and not attributable to any activity of taxpayer in the District.

In this court Lincoln seeks judgment "for the amount of refunds claimed," that is, the amount of the deficiencies assessed by the Assessor after Lincoln filed its return. Since the Tax Court made no findings of fact or conclusions of law as to whether the interest and dividends, or any part thereof, were "attributable to any trade or business carried on or engaged in within the District of Columbia" I would remand the case for consideration of these matters.[1]

## APPENDIX A

### STATE LOAN AND FINANCE CORPORATION

#### Successor by merger to Lincoln Service Corporation

##### COMPUTATION STATEMENT

| | June 30, 1958 | | March 16, 1959 | |
|---|---|---|---|---|
| Administrative Fees | | $ 900,768.57 | | $ 650,035.53 |
| Less: Expenses applicable thereto ¹ | | | | |
| Total Expenses | $1,426,486.22 | | $1,068,811.61 | |
| Less: Expenses applicable to Dividends & Interest Income | 1,101,155.38 | 325,330.84 | 769,770.48 | 299,041.13 |
| Net Income to be Apportioned | | $ 575,437.73 | | $ 350,994.40 |
| Multiplied by Apportionment Factor | | .4247 | | .3487 |
| D. C. Portion | | $ 244,388.40 | | $ 122,391.75 |
| Add: Income Allocable to D. C. | | | | |
| Dividends | $ 698,890.14 | | $ 700,159.00 | |
| Interest | 986,806.88 | | 595,197.03 | |
| Total | $1,685,697.02 | | $1,295,356.03 | |
| Less: Expenses applicable thereto | 1,101.155.38 | 584,541.64 | 769,770.48 | 525,585.55 |
| Net D. C. Taxable Income | | $ 828,930.04 | | $ 647,977.30 |
| Tax at 5% | | $ 41,446.50 | | $ 32,398.87 |
| Less: Tax Previously Paid | | 37,341.19 | | 23,798.61 |
| Balance of Tax Due | | $ 4,105.31 | | $ 8,600.26 |

| ¹ Expenses Applicable to Dividend and Interest Income: | | | | |
|---|---|---|---|---|
| Interest Expenses | | $ 941,473.49 | | $ 626,692.53 |
| Long Term Debt Expense | | 20,254.38 | | 14,917.46 |
| Sub Total | | $ 961,727.87 | | $ 641,609.99 |
| Total Expenses | $1,426,486.22 | | $1,068,811.61 | |
| Less: Sub Total Above | 961,727.87 | | 641,609.99 | |
| Remaining Expenses | $ 464,758.35 | | $ 427,201.62 | |
| Multiplied by 30% | $ 139,427.51 | 139,427.51 | $ 128,160.49 | 128,160.49 |
| Total | | $1,101,155.38 | | $ 769,770.48 |

---

1. D.C.Code § 47–2403 requires the Tax Court to make express findings of fact and conclusions of law. "The board [now the Tax Court] shall hear and determine all questions arising on said appeal and shall make seprate [*sic*] findings of fact and conclusions of law, and shall render its decision thereon in writing."

## APPENDIX B

### Statutes and Regulations Involved

The District of Columbia Income and Franchise Tax Act of 1947, 61 Stat. 345, ch. 258, as amended (Sec. 47–1571 et seq., D.C.Code 1961), and the regulations promulgated thereunder are set forth in pertinent part as follows:

#### TITLE VII. TAX ON CORPORATIONS

§ 47–1571. Taxable income defined.

For the purposes of this title, and unless otherwise required by the context, the words "taxable income" mean the amount of net income derived from sources within the District within the meaning of sections 47–1580 to 47–1580b. (July 16, 1947, 61 Stat. 345, ch. 258, Art. I, title VII, § 1.)

§ 47–1571a. Imposition and rate of tax.

For the privilege of carrying on or engaging in any trade or business within the District and of receiving income from sources within the District, there is hereby levied for each taxable year a tax at the rate of 5 per centum upon the taxable income of every corporation, whether domestic or foreign (except those expressly exempt under section 47–1554). (July 16, 1947, 61 Stat. 345, ch. 253, Art. I, title VII, § 2.)

#### TITLE X. PURPOSE OF SUBCHAPTER AND ALLOCATION AND APPORTIONMENT

§ 47–1580. Purpose of subchapter.

It is the purpose of this subchapter to impose (1) an income tax upon the entire net income of every resident and every resident estate and trust, and (2) a franchise tax upon every corporation and unincorporated business for the privilege of carrying on or engaging in any trade or business within the District and of receiving such other income as is derived from sources within the District: *Provided, however,* That, in the case of any corporation, the amount received as dividends from a corporation which is subject to taxation under this subchapter, and, in the case of a corporation not engaged in carrying on any trade or business within the District, interest received by it from a corporation which is subject to taxation under this subchapter shall not be considered as income from sources within the District for the purposes of this subchapter. The measure of the franchise tax shall be that portion of the net income of the corporation and unincorporated business as is fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District: *Provided further,* That income derived from the sale of tangible personal property by a corporation or unincorporated business not carrying on or engaging in trade or business within the District as defined in sections 47–1551 to 47–1551c shall not be considered as income from sources within the District for purposes of this subchapter, with the exception of income from sale to the United States to be excluded from gross income as provided in section 47–1557a (b) (13). (July 16, 1947, 61 Stat. 349.)

§ 47–1580a. *Allocation and Apportionment.*—The entire net income of any corporation or unincorporated business, derived from any trade or business carried on or engaged in wholly within the District shall, for the purposes of this article, be deemed to be from sources within the District, and shall, along with other income from sources within the District, be allocated to the District. If the trade or business of any corporation or unincorporated business is carried on or engaged in both within and without the District, the net income derived therefrom shall, for the purposes of this article, be deemed to be income from sources within and without the District. Where the net income of a corporation or unincorporated business is derived from sources both within and without the District, the portion thereof subject to tax under this article

shall be determined under regulation or regulations prescribed by the Commissioners. The Assessor is authorized to employ any formula or formulas provided in any regulation or regulations prescribed by the Commissioners under this article which, in his opinion, should be applied in order to properly determine the net income of any corporation or unincorporated business subject to tax under this article.

TITLE III. NET INCOME, GROSS INCOME AND EXCLUSIONS THEREFROM, AND DEDUCTIONS

§ 47–1557b (a). *Deductions Allowed.*—The following deductions shall be allowed from gross income in computing net income:

(14) *Allocation of deductions.*—In the case of corporations and unincorporated businesses, the deductions provided for in this section shall be allowed only for and to the extent that they are connected with income arising from sources within the District within the meaning of sections 47–1580 to 47–1580b; and the proper apportionment and allocation of the deductions to be allowed shall be determined by the Assessor under formula or formulas provided for in section 47–1580a.

DISTRICT OF COLUMBIA INCOME AND FRANCHISE TAX REGULATIONS

Sec. 10.2. *Measure of Tax.*—*Allocation and Apportionment.* The measure of the franchise tax shall be that portion of the net income of the corporation and unincorporated business as is fairly attributable to any trade or business carried on or engaged in within the District, as defined in the Act, and such other net income as is derived from sources within the District. The portion of such net income which is "fairly attributable" to any trade or business or such other net income as is derived from sources within the District shall be determined by allocation and apportionment thereof as prescribed in Sections 10.2–(b), 10.2–(c), 10.2–(d).

Sec. 10.2–(c). *Income Attributed to the District of Columbia.* If the trade or business is carried on or engaged in wholly within the District, the entire net income from trade or business shall be allocated to the District. If the trade or business is carried on partly within and partly without the District, that portion of the net income from trade or business to be apportioned to the District shall be determined as follows:

(2) Where income for any taxable year is derived from work done or services performed, the portion thereof to be apportioned to the District shall be such percentage of the total of such income as the aggregate of charges for or costs of such work done and services performed in the District bears to the aggregate of such charges for or costs of work done and services performed by the taxpayer everywhere. The Assessor is authorized to use the aggregate of "charges" or the aggregate of "costs" with respect to work done and services performed if in his opinion it will produce an equitable apportionment.

(3) Income for any taxable year derived from interest, dividends, rents, royalties, income from the sale of real property, income from the sale of intangible personal property, income from the sale of assets other than capital and income from a business or sources other than those hereinbefore referred to, which is fairly attributable to the trade or business carried on or engaged in within the District, or which is derived from sources within the District, shall be allocated to the District. If the trade or business herein referred to is carried on or engaged in both within and without the District, that portion of the income from trade or business to be apportioned to the District shall be such percentage of the total of such income as the aggregate of such income or charges for work done or costs of work done in the District bears to the aggregate of such income or charges for work

done or costs of work done by the taxpayer everywhere. The Assessor is authorized to use the aggregate of "income" or the aggregate of "charges" or the aggregate of "costs" with respect to such income if in his opinion it will produce an equitable apportionment.

Sec. 10.2–(d). *Allowable Deductions*. No deductions may be taken which are applicable to income not subject to tax or income which is exempt under the Act. Where part of any income is apportioned to the District, the deductions applicable thereto and allowable as such under Sec. 3(a) of Title III shall be apportioned on the same basis as that used in apportioning such income, unless, in the opinion of the Assessor, such deductions should be allocated in whole or in part. In the case of corporations and unincorporated businesses, the deductions provided for in Sec. 3(a) of Title III shall be allowable only to the extent that they are connected with income fairly attributable to the trade or business carried on or engaged in within the District and from District sources.