CAPITAL HOLDING CORPORATION,
Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 9299.

District of Columbia Court of Appeals.

Argued Sept. 16, 1975.

Decided April 18, 1977.

Rehearing and Rehearing en Banc Denied
Aug. 1, 1977.

John M. Bixler, Washington, D. C., with whom Robert D. Heyde, Washington, D. C., was on the brief for appellant.

Richard L. Aguglia, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.

Before YEAGLEY and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal by Capital Holding Corporation from a judgment denying a refund of corporate franchise (income) taxes in the amount of $273,114.29 for the years 1970, 1971, and 1972, assessed pursuant to D.C. Code 1973, § 47–1571a.

The appellant (Capital), a corporation with its only office and place of business in Louisville, Kentucky, owns substantially all[1] the stock of seven different insurance companies. It writes no insurance itself, but provides from Louisville, actuarial and investment services for its seven subsidiaries including Peoples Life Insurance Company (Peoples), a District of Columbia corporation with its home office in this city. During the taxable years at issue here, Peoples did business in 14 other states as well as within the District. In compliance with D.C.Code 1973, § 47–1806, Peoples paid a 2% net premium tax on ". . . policy and membership fees and net premium receipts or consideration received on all insurance and annuity contracts on risks in the District of Columbia. . . ." In addition, it paid a net premium tax in each of the other 14 states on its insurance contracts in those jurisdictions.

In 1970, 1971, and 1972, Peoples paid substantial dividends to appellant, the parent corporation in Kentucky, upon which the District government levied an 8% corporate income tax. After an unsuccessful protest, the parent corporation paid taxes for these three years with accrued penalty interest. It sued for a refund, but the court entered judgment for the District. On appeal, the taxpayer contends that D.C.Code 1973, § 47–1571a, which the District asserts as authority for this assessment, was not intended to apply to the receipt of such dividends but, if so construed, the statute must be deemed unconstitutional. The challenged section of the Code reads:

§ 47–1571a. Imposition and rate of tax.

For the privilege of carrying on or engaging in any trade or business within the District *and* of receiving *income from sources* within the District, there is hereby levied for each taxable year a tax at the rate of 8 per centum upon the taxable income of every corporation, whether domestic or foreign (except those expressly

---

1. Commonwealth Life Insurance Company ---------------------------- 99%

*Georgia* International Corporation, which owns 100% of the stock of Georgia International Life Ins. Co. -------------100%

International Life Insurance Company ---------------------------- 100%

Home Security Life Insurance Company ----------------------------100%

National Standard Life Insurance Company ----------------------------100%

Palmetto Life Insurance Company -------100%

Peoples Life Insurance Company --------100%

exempt under section 47–1554). The minimum tax payable shall be $25.00. . . . (emphasis supplied).[2]

The quoted section, except for subsequent amendments not relevant here, was a provision in the Act of July 16, 1947, 61 Stat. 349, the purpose of which statute is set forth in another section of the Code as follows:

§ 47–1580. Purpose of subchapter.

It is the purpose of this subchapter to impose (1) an income tax upon the entire net income of every resident and every resident estate and trust, and (2) a franchise tax upon every corporation and unincorporated business for the privilege of carrying on or engaging in any trade or business within the District and of receiving such other income as is derived from sources within the District: *Provided, however,* That, in the case of *any corporation, the amount received as dividends from a corporation which is subject to taxation under this subchapter,* and, in the case of a corporation not engaged in carrying on any trade or business within the District, interest received by it from a corporation which is subject to taxation under this subchapter *shall not be considered as income from sources within the District for the purposes of this subchapter.* The measure of the franchise tax shall be that portion of the net income of the corporation and unincorporated business as is fairly attributable to any trade or business carried on or engaged in within the District and such other net income as is derived from sources within the District; *Provided further,* That income derived from the sale of tangible personal property by a corporation or unincorporated business not carrying on or engaging in trade or business within the District as defined in sections 47–1551 to

47–1551c shall not be considered as income from sources within the District for purposes of this subchapter, with the exception of income from sale to the United States not excluded from gross income as provided in section 47–1557a(b)(13). (emphasis added).

It is apparent from the first proviso that had Peoples been subject to the District income tax fixed by § 47–1571a, no assessment upon appellant for the dividend it received from Peoples would have been warranted. This litigation arose, however, because Peoples is exempt from such income tax by reason of § 47–1806, imposing a net premium tax on receipts by insurance carriers from policyholders in the District of Columbia. This section provides that such tax shall be "in lieu of all other taxes," except for special fees under the insurance laws and real estate taxes. Even though this tax was a substitute for corporate income taxes, and apparently placed a greater burden on insurance companies than a tax limited to net profits rather than gross receipts, the District government by insisting upon a literal reading of § 47–1580 [3] assessed the income tax rate upon the dividends received by appellant from Peoples.

This ruling meant that corporations holding stock in local insurance companies, in contradistinction to corporate holders of shares in local manufacturing and banking companies, were subject to double taxation, *viz.,* an income tax on intercorporate dividends and an excise tax on premiums. Because of the inequity created by the District government's ruling, Congress passed an act in 1974,[4] which excludes from the District income tax, dividends paid to another corporation by insurance carriers subject to the tax on premiums. As the relief thus

---

2. This section is immediately preceded in the 1973 edition of the Code by the following:

§ 47–1571. Taxable income defined.

For the purposes of this title, and unless otherwise required by the context, the words "taxable income" mean the amount of net income derived from sources within the District within the meaning of sections 47–1580 to 47–1580b. . . . .

Thus the tax imposed by the District upon appellant (the foreign corporation) was not upon its entire taxable income but only that portion consisting of the dividend from Peoples.

3. Section 47–1806, although included in Title 47, is not a part of the "subchapter" referred to in the exemption clause of § 47–1580.

4. Act of April 17, 1974, Pub.L. No. 93–268.

given to appellant and other holding companies similarly situated was only prospective, the legislation did not dispose of the issues raised in the case before us by the assessments for 1970, 1971, and 1972.[5]

In the trial of the case, the government contended that appellant was subject to the tax imposed by § 47–1571a not only because it received "income from sources within the District" but also because it was "engaging in trade or business" here. Its thesis on this latter point was that appellant, which owned 99% of the shares of the local carrier, was not a passive holding company but actually controlled and directed the operations of Peoples. It offered oral testimony and documents to show that such control was exercised through interlocking directorates, an actuarial service staffed only by the parent corporation, and directives in the form of resolutions passed by the board of the holding company with respect to rates, the amount of dividends to be declared, the funds to be held in the reserve account, and the terms of an employee benefit plan. Appellant took the position, however, that its subsidiary, Peoples, operated as an independent insurance company and offered testimony to the effect that the majority of the board of directors of Peoples had no connection with the holding corporation, that the board was vested with autonomy, and regarded the advice and resolutions emanating from Capital as suggestions rather than binding instructions.

■ The trial court expressly refused to make a finding on the issue of whether appellant was "doing business" in the District, holding that its receipt of "income from sources within the District," sufficed to make it taxable under § 47–1571 even though that section of the Code uses the word "and" in describing the "privilege" which is the basis for imposition of the local income tax. In its written opinion, consisting of findings of fact and conclusions of law, the court observed:

> [T]he statute was intended to be read in the disjunctive. The authorities in this jurisdiction, which are binding on the court, have consistently construed the statute in the disjunctive. The well reasoned opinion of Judge Jo V. Morgan, in *Consolidated Title of D.C.*, Docket Nos. 1642–1660, Opinion No. 962 (Mar. 17, 1959), aff'rmd. 107 U.S.App.D.C. 211, [275 F.2d 885] (1960), points out, among other things, that if a conjunctive reading is applied to the statute, one result that would necessarily follow is that if a corporation *is* engaged in business in the District but is *not* receiving *other* income from a source within the District, it would not be liable for the franchise tax. Now, as then, the court does not believe that such was the intent of the statute. The case of *D.C. v. Virginia Hotel*, 92 U.S.App.D.C. 186, [204 F.2d 390,] has also construed the statute consistent with this position. . . . (emphasis in original). [R. 58–59.]

Despite these citations of authority, appellant urges us to reverse on this issue of statutory interpretation, arguing that to disregard the use of the conjunctive in § 47–1571a does violence to the wording of the statute. Were this question a matter of first impression,[6] we might also be disturbed by the reasoning of the Tax Court in *Consolidated Title, supra,* upon which the court below relied. We regard the result reached by the Tax Court in that case as sound, however, because Congress in explaining in § 47–1580 the purpose of § 47–1571a, referred in the first proviso previously quoted to two classes of corporations whose receipt of income from another corporation subject to the local income tax

5. The suit for refund covers the payments on the following assessments:

| Year | Tax Assessed | Interest Assessed | Date of Assessment |
|------|--------------|-------------------|--------------------|
| 1970 | $ 69,071.22  | $7,597.83         | 2/ 6/73            |
| 1971 | 84,308.88    | 4,215.44          | 2/ 6/73            |
| 1972 | 102,294.71   | 5,626.21          | 3/15/74            |

6. The disjunctive reading was implicitly approved in *Consolidated Title Corp. v. District of Columbia*, 107 U.S.App.D.C. 221, 275 F.2d 885, *cert. denied*, 364 U.S. 817, 81 S.Ct. 48, 5 L.Ed.2d 48 (1960), and in *District of Columbia v. Virginia Hotel Co.*, 92 U.S.App.D.C. 186, 187, 204 F.2d 390, 391 (1953).

would be exempt from taxation. One of these references is

. . . and, in the case of a corporation not engaged in carrying on any trade or business within the District, . . . .

Thus, it is plain from the text of this provision of the statute that a corporation not doing business here was nevertheless covered by § 47–1571a if receiving income from a District source.

A more serious question raised by the appeal is directed to the measure of the tax. The assessments challenged here were based upon the entire dividends paid by Peoples to the appellant corporation in the years 1970 to 1972, even though the government's brief concedes that such dividends were the "result of doing business in these fourteen states and the District of Columbia . . . ." (Br. 2) In short, the government does not contend that the 1970, 1971, and 1972 dividends represented net income due solely to Peoples' business operations within the District. Yet if Peoples itself had not been exempt from income taxation because of the premiums tax, its tax liability would have been limited to that fraction of its profits resulting from the business it carried on here, because "taxable income" is defined by § 47–1571 as "the amount of net income derived from sources within the District" or, as § 47–1580 explains it, "that portion of the net income . . . as is fairly attributable to . . . business carried on . . . within the District . . . ."

Thus, holding taxable the total dividends received by the holding corporation, as distinguished from that small portion thereof fairly attributable to such business as the dividend-paying corporation conducted in this jurisdiction, creates an odd situation. In refusing to limit the tax on dividends received by appellant to such portion, the trial court relied again upon *Consolidated Title, supra.* There, a holding company transacting all its corporate business in the District and whose entire income consisted of dividends paid it by three tax exempt

title examination and insurance corporations chartered in the District and having their principal offices here, appealed a judgment approving an assessment of franchise taxes upon its total income. In affirming, the United States Court of Appeals for this circuit observed:

The Tax Court held, and we agree, that petitioner received its income from "sources within the District" and was therefore subject to these taxes. The "sources" were petitioner's subsidiary corporations. Since they had their principal offices and businesses in the District, they were "within the District"; they were "'domiciled' therein, corporately and commercially", as the Tax Court found. It is immaterial that some of their business was done elsewhere. We are not concerned with the sources of *their* income, but only with the sources of petitioner's income. . . . [*Consolidated Title Corp. v. District of Columbia,* 107 U.S.App.D.C. 221, 222, 275 F.2d 885, 886, *cert. denied,* 364 U.S. 817, 81 S.Ct. 48, 5 L.Ed.2d 48 (1960) (emphasis in original).]

■ This was all that the circuit court said with respect to this issue, for apparently no constitutional questions were raised on appeal by the taxpayer. In the case before us, however, appellant argues that any construction of the local franchise tax statute which would tax dividends of a corporation derived substantially from out-of-state earnings is contrary to the due process clause. We think that appellant has raised a substantial federal question, for a number of Supreme Court decisions upholding the right of states to levy a franchise tax on corporations for the privilege of doing business within their boundaries, have indicated that such tax must be limited to the transactions within the taxing state, *Connecticut General Life Ins. Co. v. Johnson,* 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938), or that portion of dividends fairly reflecting such transactions, *International Harvester Co. v. Wisconsin,* 322 U.S. 435, 442, 64 S.Ct. 1060,

88 L.Ed. 1373 (1944). As Mr. Justice Stone pointed out in the *Connecticut General* case:

> The grant by the state of the privilege of doing business there and its consequent authority to tax the privilege do not withdraw from the protection of the due process clause the privilege, which California does not grant, of doing business elsewhere. *Western Union Telegraph Co. v. Kansas,* 216 U.S. 1, 30 S.Ct. 190, 54 L.Ed. 355; *International Paper Co. v. Massachusetts,* 246 U.S. 135, 38 S.Ct. 292, 62 L.Ed. 624, Ann.Cas. 1918C, 617; *Louisville & Jeffersonville Ferry Co. v. Kentucky,* 188 U.S. 385, 398, 23 S.Ct. 463, 47 L.Ed. 513. Even though a tax on the privilege of doing business within the state in insuring residents and risks within it may be measured by the premiums collected, including those mailed to the home office without the state, *Equitable Life Assurance Society v. Pennsylvania,* 238 U.S. 143, 35 S.Ct. 829, 59 L.Ed. 1239, and though the writing of policies without the state insuring residents and risks within it is taxable because within the granted privilege, *Compañia General de Tabacos v. Collector,* supra, 275 U.S. 87, 98, 48 S.Ct. 100, 104, 72 L.Ed. 177, there is no basis for saying that reinsurance which does not run to the original insured, and which from its inception to its termination involves no action taken within California, even the settlement and adjustment of claims, is embraced in any privilege granted by that state. . . . [*Connecticut General Life Ins. Co. v. Johnson, supra* at 82, 58 S.Ct. at 439.]

■ Hence, it is clear that the District could not tax Peoples for premiums received from sales of insurance in other jurisdictions or dividends based in whole or in part upon net income from such sales. Appellant contends that imposition of the franchise tax upon the same income by reason of its being paid to it as dividends has the same effect, and consequently the trial court's holding on the validity of the challenged assessment was constitutionally objectionable. In fact, appellant urges that

unless a foreign corporation does business here, any local tax upon its investment income, irrespective of the source, is repugnant to due process.

■ We find it unnecessary to reach this issue, for it is our opinion that the statute itself, if read in light of constitutional limitations, did not authorize the District government to levy the challenged assessment. In our view, the trial court fell into error by failing to note that this case is distinguishable in two salient respects from *Consolidated Title, supra,* which it deemed controlling.

The Tax Court in that case, while correctly recognizing that § 47–1571a when read in conjunction with § 47–1580, intended to reach two kinds of income (a) income realized from carrying on business within the District and (b) other income from District sources, said that either kind (not necessarily both) subjected a corporation to taxation. In *Consolidated Title,* however, the Tax Court specifically found that the activities of the taxpayer did not amount to "carrying on or engaging in any trade or business" here, as all that it did was to hold the stocks of the three operating subsidiaries, distribute to its own stockholders income represented by the dividends on such stocks, and conduct meetings of its own stockholders, directors, and officers. This finding then enabled the court to view as *"other income"* the dividends received from such stocks. *See* 87 W.D.L.R. 288 at 289.

In the instant case the trial court—perhaps because the reported opinion of the circuit court's affirmance in *Consolidated Title* did not comment on this finding—assumed it was unnecessary to decide whether appellant was "carrying on business within the District" despite evidence presented by the government to show that it was. In thus disposing of the matter, the court overlooked the possibility of different tax consequences had it made a finding agreeing with the contention of the District government.

■ The latter's position was that because of the control appellant exercised

over the operations of its subsidiary, Peoples was merely an agent of the parent corporation. If, in fact, the subsidiary was the alter ego of appellant Capital, it would appear that for tax purposes appellant must be deemed a corporation doing business "within and without the District" within the meaning of § 47–1580a. Hence, under the doctrine of *District of Columbia v. Evening Star Newspaper Company,* 106 U.S. App.D.C. 360, 368, 273 F.2d 95, 103 (1959), its "taxable income" would not have included income fairly attributable to business carried on in the other 14 states. Thus, wholly apart from any exemption stemming from the net premiums provision, appellant's liability upon the income it obtained from managing its subsidiary could not exceed the "amount of net income derived from sources within the District . . . ." D.C.Code 1973, § 47–1571, *supra* note 2.

■ It should be noted that appellant, if found to be "carrying on business within the District", was not subject to the franchise tax on the theory that by collecting the dividend from Peoples, it was "receiving income from sources within the District" within the meaning of § 47–1571a, for § 47–1580 by using the term *"other* income" (emphasis supplied) shows that the purpose of the second clause was to reach income not derived from the business, if any, carried on by a corporate taxpayer. Thus, in the *Evening Star*[7] case, the court held that the second clause (relating to receipt of income) did not refer to operating income but to such unrelated revenues as royalties and rents from real estate. The government, in this case, takes the same view of the statute. *See* page 13 of appellee's brief:[8]

> The second clause of this sentence states that the tax will be imposed for "receiving such *other* income as is derived from sources within the District." The word

"other" indicates that Congress also intended to tax income received by a corporation from a source within the District other than that received while engaged in business in the District. (emphasis in original).

Plainly, if appellant through its instrumentality, Peoples, was doing business in the District, the dividend paid by its subsidiary was the fruit of such operational activity, and not something "other" than that received while engaged in such business. But as the parties agree that such dividend was produced by the operations of the subsidiary in 14 states as well as the District, a proper assessment would cover only a portion thereof.

Accordingly, the case is remanded for further proceedings and a written finding and conclusion by the trial court on the issue of whether appellant was carrying on a business within the District. In determining this question, the court should consider not only the possible relevance of the two judicial opinions cited by the government,[9] but also such recent holdings as *Price v. Griffin,* D.C.App., 359 A.2d 582 (1976), and *Darlington Manufacturing Co. v. NLRB,* 397 F.2d 760 (4th Cir. 1968), *cert. denied,* 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969).

Only if the trial court should determine this question in the negative, would it then be necessary to consider whether the construction of the word "sources" by the circuit in *Consolidated Title* is still to be regarded as the law of this jurisdiction in light of the admonitions of the Supreme Court in the decisions cited in the body of this opinion. The authority of *Consolidated Title* has been considerably weakened in the interim by two cases not cited in the briefs of either party, *General Motors Corp. v. District of Columbia,* 380 U.S. 553, 85 S.Ct.

---

7. There, the taxpayer was held entitled to have its liability for operating revenues apportioned on a geographic basis but liable for an additional tax on rents received from tenants in its local building.

8. The reference is to the first sentence in § 47–1580.

9. *Edwards v. Chile Copper Co.,* 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678 (1926); *American Investment Securities Co. v. United States,* 112 F.2d 231 (1st Cir. 1940).

1156, 14 L.Ed.2d 68 (1965), *rev'g* 118 U.S. App.D.C. 381, 336 F.2d 885 (1964), and *State Loan & Finance Corp. v. District of Columbia,* 127 U.S.App.D.C. 116, 381 F.2d 895 (1967). In the latter case, the circuit court avoided the problem of overruling *Consolidated Title* by invalidating the tax assessed on the dividends received by the taxpayer corporation from its subsidiaries on the ground that their principal places of business were outside the District, even though each held their directors and stockholders meetings (and presumably declared their dividends) in this jurisdiction. Thus, as the court explained:

> Because of our interpretation as to the meaning of source as used by the statute, we need not reach the difficult constitutional questions of whether the use of commercial domicile in a determination of source within this statute would result in an unconstitutional apportionment within the *General Motors* case, *supra,* or would be under *General Motors Corp. v. Washington,* 377 U.S. 436, 84 S.Ct. 1564 [12 L.Ed.2d 430] (1964), a tax without apportionment, or without "nexus" within the state. [*State Loan & Finance Corp. v. District of Columbia,* 127 U.S. App.D.C. at 123, 381 F.2d at 902 (footnotes omitted).]

The record in the instant case shows that as measured by the net premium tax in the jurisdictions in which Peoples sold insurance and annuity contracts, premiums paid by residents of the District amounted to less than 3% of the total of such payments to the carrier.[10] Yet by treating the entire dividend as having a District source and therefore taxable to appellant, the holder of the stock, the trial court upheld a method of taxation which is difficult to reconcile with the due process requirement of a nexus between such tax and the transactions within the taxing jurisdiction.[11]

We are aware that the Supreme Court has just rejected the doctrine that state taxes on the "privilege of doing business" are unconstitutional per se as a burden on interstate commerce, *Complete Auto Transit, Inc. v. Brady,* —— U.S. ——, ——, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), *overruling Spector Motor Service v. O'Connor,* 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). Nevertheless, even in this opinion, handed down while the case at bar was under consideration in this court, the Supreme Court did not depart from the rule that state franchise or state income taxes levied upon corporations doing business in several states, cannot be sustained unless limited to some formula restricted to corporate activity within the taxing state. In *Brady, supra,* where the Court upheld a Mississippi franchise tax on an interstate carrier based upon revenue from transportation between points within that state, it was at pains to emphasize that the taxpayer did not allege that ". . . its activity which Mississippi taxes does not have a sufficient nexus with the State; or that the tax discriminates against interstate commerce; or that the tax is unfairly apportioned; or that it is unrelated to services provided by the State." at ——, 97 S.Ct. at 1078. According to this opinion, a tax statute on interstate commerce may be sustained if it meets these four tests—the Court citing *General Motors Corp. v. Washington,* 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); *Northwestern Cement Co. v. Minnesota,* 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); *Memphis Gas Co. v. Stone,* 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1948); and *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940).[12]

By construing the word "sources" to embrace a dividend not apportioned to its derivation from local business or fairly relating to services provided by the District, the

---

10. *See* "Stipulation of Facts."

11. In the two cases relied on by the trial court for upholding the constitutionality of the tax on the entire dividend, the challenged taxes were limited to earnings in the taxing jurisdiction. *See Wisconsin v. J. C. Penney,* 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940) (tax on dividends

of foreign corporation); *Shaffer v. Carter,* 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920) (tax on nonresidents for income derived from properties or businesses located in Oklahoma).

12. At ——, n. 8, 97 S.Ct. at 1079.

trial court does not appear to have taken into account the constitutional limitations of our corporate franchise act. In dealing with an almost identical statute, the highest court in Kentucky in *Atlantic Coast Line R. Co. v. Commonwealth,* 302 Ky. 36, 193 S.W.2d 749 (1946), reached a different result in order to avoid another construction threatening constitutionality. *Cf. Shaffer v. Carter,* 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920).

In arriving at a proper method of apportionment, the trial court need not limit itself to determining the ratio between local and aggregate premium collections but may take into consideration the geographical distribution of payroll (employees), property, sales, and § 10.2 of the D.C. Income and Franchise Regulations issued pursuant to § 47–1580a. *See General Motors Corp. v. District of Columbia, supra,* 380 U.S. at 559, 561, 85 S.Ct. 1156.[13]

*Reversed and remanded for further proceedings and a determination consistent with this opinion.*

MACK, Associate Judge, dissenting:

I do not see the logic of remanding for a finding as to the alternative of a two-part disjunctive proviso where a finding has been previously made as to the other alternative. I would affirm the trial court's judgment.

In my opinion, the circuit court's decision in *Consolidated Title Corporation v. District of Columbia,* 107 U.S.App.D.C. 221, 275 F.2d 885, *cert. denied,* 364 U.S. 817, 81 S.Ct. 48, 5 L.Ed.2d 48 (1960), is controlling here, and unless and until this court reconsiders the issue en banc,[1] we are bound by its interpretation of "sources" in D.C.Code 1973, § 47–1571a. Under this view it is "immaterial that some of their [Peoples'] business was done elsewhere. We are not concerned with the sources of *their* income, but only with the sources of . . . [Capital Holding's] income." 107 U.S.App.D.C. at 222, 275 F.2d at 886.

Nor do I think that this tax was unconstitutional.

The test is whether property was taken without due process of law, or . . . whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. [*Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).] *See also Complete Auto Transit, Inc. v. Brady,* —— U.S. ——, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).

The tax may well have been burdensome while it existed, but that is not the issue. This franchise tax—for the privilege of receiving dividends paid by a District of Columbia corporation—was not, in my view, so unrelated to the District as to be constitutionally deficient.

I respectfully dissent.

---

**13.** *Cf. State Loan & Finance Corp. v. District of Columbia, supra,* 127 U.S.App.D.C. 116, 123 n. 11, 381 F.2d 895, 902 n. 11 (1967).

**1.** *M. A. P. v. Ryan,* D.C.App., 285 A.2d 310, 312 (1971).